456 F.2d 79
 Eugene RODRIGUEZ, and the United States of America ex rel.
Eugene Rodriguez, Petitioner-Appellee,
v.
Paul D. McGINNIS, Commissioner of Correction, et al.,
Respondents-Appellants.
UNITED STATES ex rel. Michael Katzoff, Petitioner-Appellee,
v.
Paul D. McGINNIS, Commissioner of Correction of the State of
New York and John T. Deegan, Warden of Auburn
State Prison, Auburn, New York,
Respondents-Appellants.
John KRITSKY, and United States of America ex rel. John
Kritsky, Petitioner-Appellee,
v.
Paul D. McGINNIS, Commissioner of Correction, Russell G.
Oswald, Chairman of the Board of Parole, J. Edwin LaVallee,
Warden of Clinton State Prison, New York State Board of
Parole and New York State Department of Correction,
Respondents-Appellants.
 Nos. 354-356, Dockets 34567, 35300, 35253.
 United States Court of Appeals,
Second Circuit.
 Argued to the in banc court Nov. 4, 1971.
Decided Jan. 25, 1972.
 
 Before FRIENDLY, Chief Judge, and LUMBARD, WATERMAN, MOORE, SMITH, KAUFMAN, HAYS, FEINBERG, MANSFIELD, MULLIGAN, OAKES and TIMBERS, Circuit Judges.ORDER
 
 
 1
 The District Court for the Northern District of New York having, by order date December 23, 1969, directed the release of petitioner Eugene Rodriguez, on the ground that he was unconstitutionally deprived of good behavior time credit, in an opinion reported at 307 F.Supp. 623, and a panel of this court by decision dated March 16, 1971, 451 F.2d 1969, 730, having reversed said order by a divided vote;
 
 
 2
 The District Court for the Northern District of New York having, by order dated August 18, 1970, directed the release of petitioner Michael Katzoff, on the ground that he was unconstitutionally deprived of good behavior time credit, and this court by decision dated March 29, 1971, 441 F.2d 558, having reversed said order by a divided vote;
 
 
 3
 The District Court for the Northern District of New York having, by order dated June 12, 1970, directed the release of petitioner John Kritsky, on the ground that he was unconstitutionally deprived of good behavior time credit, and this court having heard but not decided the State's appeal therefrom;
 
 
 4
 This court, by order dated July 19, 1971, having directed that the appeals in such cases be reheard in banc, the three appeals being consolidated for argument since they presented the same legal issue, before an in banc court which would consist of the judges who should be in active service on the date of decisions along with members of the respective panels who had taken senior status, and the court having received further briefs and heard oral argument, it is
 
 
 5
 Ordered that the said judgments of the District Court for the Northern District of New York be and they hereby are affirmed upon consideration of the merits and upon the authority of Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418, decided by the Supreme Court of the United States on December 14, 1971.
 
 
 6
 [s] Henry J. Friendly
 
 
 7
 HENRY J. FRIENDLY,
 
 Chief Judge
 
 8
 FRIENDLY, Chief Judge, with whom MULLIGAN, Circuit Judge, joins concurring:
 
 
 9
 Although I had previously voted for reversal in these cases, it seemed to me that once Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418, was decided by the Supreme Court on December 14, 1971, the proper course for the in banc court was to affirm the orders of the district court without writing opinions, and to leave it to the State of New York to assert possible distinctions by petitions for certiorari. Now that several of my brothers have chosen to dissent in an opinion, I feel obliged to explain my own position.
 
 
 10
 I agree with Judge Lumbard that petitions of state prisoners complaining of the time or conditions of their confinement have the same potentialities for exacerbating federal-state relations as petitions attacking the validity of their confinement-perhaps even more. That federal concern on this score is not limited to challenges to the validity of convictions is evidenced by cases such as Ex parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886), from which the exhaustion requirement sprang, and Dye v. Johnson, 338 U.S. 864, 70 S.Ct. 146, 94 L.Ed. 530 (1949), reversing per curiam, 175 F.2d 250 (3 Cir.1949). On the other hand, I cannot accept the conclusion that if such petitions are properly viewed as invoking 42 U.S.C. Sec. 1983, a federal court can require exhaustion of state judicial remedies, if these are available. This is not simply because of the Supreme Court pronouncements which, except for the summary dispositions in Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968) and in Wilwording v. Swenson, were not in state prisoner cases, but because abstention would mean abdication in any case where the state afforded a fair hearing, whether the proper constitutional standards were applied or not. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1963); Lackawanna Police Benevolent Ass'n v. Balen, 446 F.2d 52 (2 Cir.1971), and cases there cited.
 
 
 11
 The right answer, it seems to me, is that, under the broad scope the Supreme Court has given to the "Great Writ" as enacted by the Act of 1867, 14 Stat. 385, all state prisoner petitions complaining of the length or manner of custody, however phrased, are in fact petitions for habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court . . . on the ground that he is in custody in violation of the Constitution or laws of the United States." Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Walker v. Wainwright, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). If they are, 28 U.S.C. Sec. 2254(b) forbids a federal court from proceeding in the first instance "unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner"-an exception sufficiently broad to enable a federal court to look at what the state courts actually do. Because of the inapplicability of res judicata in habeas corpus, recognition that such petitions are for that remedy also means that an aggrieved prisoner who has not received satisfaction at the hands of a state court can return to the federal court for a "final federal say" concerning the appropriate legal standard, although the federal court will be bound by proper state factual findings. I recognize that a number of cases, including Houghton v. Shafer, supra, and Jackson v. Bishop, 404 F.2d 571 (8 Cir.1968), cited by the Court in Wilwording, have assumed that state prisoner complaints over the conditions of custody come under 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 1343(3) rather than under 28 U.S.C. Sec. 2254. But the issue was not there raised, and the problem of such prisoner applications had not yet reached its present dimensions.
 
 
 12
 If this is the correct analysis, I do not understand how a state prisoner who is entitled to relief by habeas corpus under 28 U.S.C. Sec. 2254 can opt out of that section, with its attendant requirement of exhaustion of state remedies when these are available, simply by styling his petition as one under the Civil Rights Act. But Wilwording seems to indicate that he can. For that reason I am constrained to concur in affirming the orders of the district court.
 
 WATERMAN, Circuit Judge (concurring):
 
 13
 I concur in the affirmance of the judgments below and in the opinions of my brothers Smith, Kaufman, Feinberg and Oakes. And see my statement filed in Rodriguez v. McGinnis et al. 451 F.2d 730 at 733.
 
 
 14
 J. JOSEPH SMITH, Circuit Judge (concurring):
 
 
 15
 I concur in the affirmance of the judgments below and in the opinions of my brothers Kaufman, Feinberg and Oakes. As indicated in my dissent to the panel opinion in Katzoff, 441 F.2d 558, 560, I would not hold that either abstention in deference to the state courts or exhaustion under the requirements of 28 U.S.C. Sec. 2254(b) in habeas corpus actions may bar a prisoner from his choice of a federal forum in a civil rights action. I had thought that this was reasonably plain from McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), and our own course in Sostre v. McGinnis, 442 F.2d 178 (2d Cir.1971). Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418, Dec. 14, 1971, bolsters that view.
 
 
 16
 Moreover, I question the desirability of even attempting to lighten our burden by stifling or delaying prisoners' complaints of unconstitutional abuse. It may be an onerous burden, especially in the districts where large state prisons are located. Many petitions are poorly prepared, confusing and mendacious. They do take the time of busy courts. But these cases now before us demonstrate that among them are some of substance, a circumstance which makes the effort worthwhile. It would be far better to provide more assistance in the districts which contain Attica and the other large institutions giving rise to these issues than to deny redress within the federal court system for deprivation of civil rights.
 
 IRVING R. KAUFMAN, Circuit Judge (concurring):
 
 17
 The question which was presented to this court in banc is whether a state prisoner must exhaust state judicial remedies before he can bring an action for equitable relief under 42 U.S.C. Sec. 1983, where his complaint charges that state prison officials have deprived him of fundamental personal rights. My unwavering answer to that question was that exhaustion is not required. Moreover, I agreed with Chief Judge Friendly that it was appropriate to dispose of these cases without opinions because of the Supreme Court's clear and unconditional holding in Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). Since my brothers have chosen to file opinions explaining their positions, I believe it is necessary for me to state the reasons for the views I hold.
 
 
 18
 In Wilwording the Supreme Court instructed that: "State prisoners are not held to any stricter standard of exhaustion than other civil rights plaintiffs." This pronouncement was based on its decisions beginning with Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), where the Supreme Court held that the federal remedy provided by Sec. 1983 "is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." See also McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). I note also that Wilwording emphasized that the result in no way depended upon the inadequacy of state remedies. Quoting from Houghton v. Shafer, id. at 640, 88 S.Ct. at 2120, it added: "in 'any event, resort to these remedies is unnecessary."'
 
 
 19
 I believe, however, that I should state candidly that I did not construe Wilwording as a ground breaking decision. The opinion instead indicates that Court's clear deference to the doctrine of stare decisis. See Monroe v. Pape, 365 U.S. at 192, 81 S.Ct. 473 (Harlan, J., concurring). And it was our adherence to the principles gleaned from the earlier Supreme Court decisions that led us to conclude in our recent in banc decision in Sostre v. McGinnis, 442 F.2d 178, 182 (2d Cir. 1971), that exhaustion of state legal or equitable remedies is not a prerequisite for a state prisoner to maintain a Sec. 1983 action.
 
 
 20
 I do not intend to argue with statistics indicating that prisoner petitions are on the rise; nor shall I pretend that this condition is pleasing to judges. But I cannot believe that federal jurisdiction in cases involving prisoner rights is any more offensive to the state than federal jurisdiction in the areas of police procedures for search, arrest and detention, Monroe v. Pape, supra, or education, McNeese v. Board of Education, supra, or welfare, Damico v. California, supra, or public housing, Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir.1968). I can think of no reason why the question of prison administration should be classified as one of greater or more peculiar state concern than the instances to which I have just referred. In any event, neither of the grounds articulated is a tolerable basis for declining jurisdiction where a prisoner specifically alleges facts indicating a callous disregard of his basic human and constitutional rights, see Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), or for reworking accepted principles of federal jurisdiction in one sweep of the judicial pen.[1]
 
 
 21
 The Supreme Court's decision in Wilwording will not lead to the subversion or circumvention of the habeas corpus exhaustion requirement, codified in 28 U.S.C. Sec. 2254(b), which is concerned with prisoner challenges to the validity of state court convictions or sentences. See Sostre v. McGinnis, 442 F.2d at 182. See also Fay v. Noia, 372 U.S. 391, 419-420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171, 172-173 (1948). Collateral attack on a final state court adjudication is toto caelo from an untried constitutional claim unrelated to a prior proceeding. Under these circumstances, I see no basis for radically expanding the impact of Sec. 2254(b) or, to put it another way, for concluding that Congress intended by that section to carve out an exception to Sec. 1983 for state prisoners challenging an invasion of their constitutional rights during confinement and stating a valid claim for equitable relief. Indeed, the sua sponte construction by the Supreme Court of Wilwording's petition as a complaint under Sec. 1983 clearly articulates that state prisoners alleging deprivation of constitutional rights by prison officials are not forced to mold their claim for relief in the form of a petition for a writ of habeas corpus. I find it difficult to believe that the Court, specifically confronted with the alternative modes of pleading, overlooked or did not consider fully the interaction of 28 U.S.C. Sec. 2254(b) and 42 U.S.C. Sec. 1983.[2]
 
 FEINBERG, Circuit Judge (concurring):
 
 22
 I agree with Judges Kaufman and Smith that under the authorities there is simply no basis for requiring these state prisoners to exhaust state judicial remedies as a condition to bringing an action for equitable relief under 42 U.S.C. Sec. 1983. And I further agree with them and with Chief Judge Friendly that application of the abstention doctrine is not appropriate.
 
 
 23
 Were those my complete views on these cases, I would resist the temptation to add yet another opinion and would simply concur since my brothers have admirably and succinctly covered those issues. However, there is a further point-perhaps implicit in their opinions-that I believe should be made. If the already over-burdened federal courts are being overwhelmed by frivolous prisoner petitions, it surely is desirable to find some way of coping with that problem in a manner that is nonetheless fair and just to prisoners, whose claims of mistreatment have too often been ignored in the past. But the correct way to reach that result is not for us to indulge in judicial legislation but for Congress to enact an appropriate statute, which could take into account the conflicting policy considerations and could include compromises, limitations and safeguards that we as a court can-not legislate.
 
 MANSFIELD, Circuit Judge (concurring):
 
 24
 I concur in Judge Friendly's opinion. I would add that prior to Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (U.S.Dec. 14, 1971) (per curiam), my view was that even though there might be cases where a state prisoner's complaint, purportedly brought pursuant to Sec. 1983, could not be treated as a petition for habeas corpus, a federal court, upon its finding that the prisoner was seeking equitable relief and was afforded an adequate state court remedy (as here), had the discretionary power as a court of equity to defer action pending the prisoner's application to the state court for relief. See Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944); Alabama v. United States, 304 F.2d 583, 590 (5th Cir.), affd. per curiam, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962); Pugach v. Dollinger, 277 F.2d 739, 742 (2d Cir. en banc 1960), affd., 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961). Upon the prisoner's showing that the state would not offer a reasonably prompt and fair hearing, on the other hand, the federal court would be required to proceed.
 
 
 25
 The competence of New York state courts to apply federal constitutional principles is not disputed. In most instances their facilities are closer to the state prison in which the prisoner-plaintiff is located (and where regular state court sessions are held) than is the nearest federal court. Furthermore the state court is in a position to insure greater cooperation on the part of essential state personnel (e. g., local and state police, clerks, sheriffs, court reporters and officers of state and county departments) than is the federal court. For example, unless Wilwording is limited, suits for injunctive relief by prisoners of one of New York's largest institutions, Clinton Prison, Dannemora, Clinton County, must be heard by the United States District Court for the Northern District of New York, which is located in Albany, 180 miles away. The single federal judge, with only two holding cells and two deputy marshals at his command, will face the necessity of bringing prisoner-plaintiffs and other prisoner-witnesses on a 360-mile round trip in federal custody. By way of contrast, the New York Supreme Court for Clinton County, with no appreciable calendar problem, is equipped to hold court in a nearby county courthouse or in the prison itself.
 
 
 26
 The extent to which state prisoners' habeas corpus petitions have been dressed up in a Sec. 1983 suit of clothes, often merely with a view to the prisoner's availing himself of the change of scenery offered by federal facilities, is attested by statistics compiled by the Administrative Office of the United States Courts. The 1971 Annual Report of its Director reveals (Table 14, II-48) that from 1968 to 1971 state prisoners' habeas corpus petition in the United States district courts increased 30%, whereas civil rights suits increased 170%, and that from 1970 to 1971 such habeas corpus petitions declined 7.6%, while such civil rights petitions increased 43.6%.
 
 OAKES, Circuit Judge (concurring):
 
 27
 I concur in the affirmance of the judgments below and in the opinions of Judges Smith and Kaufman, agreeing as I do with the original reasoning of Judge Waterman in his dissent in Rodriguez v. McGinnis, 451 F.2d 730 (2d Cir., 1971), and Judge Smith in his dissent in Katzoff v. McGinnis, 441 F.2d 558, 560 (2d Cir. 1971). It is not my impression that the federal courts are being overwhelmed with frivolous prisoners' petitions-indeed, many have been highly meritorious. But I agree with Judge Feinberg that if the courts were so burdened, judicial legislation is not the appropriate method of meeting the problem.
 
 
 28
 To the extent that the dissenting opinion of Judge Lumbard and the concurring opinions of Chief Judge Friendly and Judge Mansfield make arguments directed to the Congress that warrant further reply, that reply, it seems to me, may more appropriately be made in some place other than a judicial opinion. To the extent that those same opinions imply a request to the Supreme Court to reconsider and overrule its own line of cases sustaining jurisdiction, the most recent of which may be Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), I would simply register my vehement disagreement.
 
 
 29
 TIMBERS, Circuit Judge, concurs in the opinions of Judges J. JOSEPH SMITH, IRVING R. KAUFMAN and FEINBERG.
 
 
 30
 LUMBARD, Circuit Judge (dissenting), with whom MOORE and HAYS, Circuit Judges, concur:
 
 
 31
 I dissent.
 
 
 32
 Three petitioners seek federal court orders which would direct state prison authorities to take action to correct allegedly unconstitutional treatment.
 
 
 33
 Michael Katzoff, formerly an inmate of Green Haven Correctional Facility serving a sentence of one to three years for possession of a dangerous weapon, complains that the state acted unconstitutionally in depriving him of good behaviour time as punishment for recording offensive remarks in his diary.
 
 
 34
 Eugene Rodriguez, formerly an inmate of the Ossining Correctional Facility serving a term of one and one-half to four years for the crimes of perjury and attempted larceny, complains that the state unconstitutionally cancelled good time for either possession of contraband or refusal to disclose its source.
 
 
 35
 John Kritsky, presently an inmate of Clinton Correctional Facility serving a sentence of 15 to 18 years for the crime of armed robbery, complains of unconstitutional deprivation of good time because of his participation in an inmate strike at Auburn Correctional Facility.
 
 
 36
 All these actions were brought under 42 U.S.C. Sec. 1983, and in each case the district court granted relief to the petitioner. I would reverse the orders of the district courts and remand with directions to stay further proceedings pending a hearing of the claims in the state court.
 
 
 37
 Prior to Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418, decided December 14, 1971, I had hoped that these three cases could be resolved, consistent with Supreme Court authority, by a requirement of exhaustion of state remedies as a condition precedent to a cause of action in the federal courts under the Civil Rights Act by a state prisoner seeking equitable relief from allegedly unconstitutional prison conditions or sanctions. Wilwording suggests the contrary, but it dealt with an inmate in a Missouri prison and Missouri apparently makes no provision for hearing such cases in its courts.[1] I still think there is room to hold that a district court in New York-which does provide an adequate remedy in its courts for the redress of legitimate prisoner complaints[2]-should refrain from hearing such a case until the state court has acted thereon, so long as on-going physical brutality is not involved, as it was in Inmates of Attica Correctional Facility v. Rockefeller, decided by this court December 1, 1971, 453 F.2d 12.
 
 
 38
 I am not unmindful that what the Court has said per curiam in Wilwording follows much that was said along the same lines in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), and Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). Only in Houghton, however, was the petitioner serving a sentence in a state prison, and it does not appear from the record what, if any, remedies were available to Houghton in the Pennsylvania state court. In any event, the Court did not pass on the considerations which seem to me to compel the conclusion that the federal courts should not hear these cases in the first instance where the state courts are ready, willing and able to give relief.
 
 
 39
 The resolution of differences between inmates and jailers in state prisons is peculiarly a matter of state interest and concern. These matters can better be determined by the state court which is nearby and available for immediate resolution of such disputes. For some years justices of the Supreme Court of the State of New York, the highest trial court of general jurisdiction, have held court in courtrooms within the confines of the prisons. Thus the petitioning prisoner and any necessary witnesses can be heard with a minimum of risk and expense. By contrast, a hearing in the federal courts requires that prisoners must be moved considerable distances under circumstances presenting a danger of escape and injury to members of the public, to say nothing of substantial expense to the state.
 
 
 40
 Recent unrest and dissatisfaction in New York state prisons reached a tragic climax at Attica Correctional Facility where a four-day inmate uprising took a death toll of 11 hostages and 32 inmates. Allowing a state prisoner the choice of being heard in a federal court would seem an obvious means of exacerbating relations between state prisoners and their jailers. Obviously the holding of a hearing at a distant federal court is a far greater interruption of prison life and routine than a hearing inside a state prison by a state judge. Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971) (en banc), is a good example of what may frequently be involved in a federal court hearing. That case was tried before Judge Motley in the Southern District of New York during seven days of trial extending from Wednesday, October 29, 1969 to Friday, November 7, 1969. In addition to Sostre, who was brought from Walkill Correctional Facility, Walkill, New York, to testify, two other state prisoners were transported to the hearing from Green Haven Correctional Facility, Stormville, New York. The warden, the food service manager, a doctor, and eleven guards from Green Haven testified. Five guards from Attica Correctional Facility, Attica, New York, testified, as did one from Clinton Correctional Facility, Dannemora, New York.
 
 
 41
 If the federal courts must hear these suits and resolve factual issues, it is a clear invitation to state prisoners to frame complaints of alleged mistreatment so that they will, at the least, be afforded some vacation from the tedium of prison life.
 
 
 42
 It could hardly have been the intention of the Congress in enacting Sec. 1983 that it would be the means whereby state prisoners would place state authorities on trial for the manner in which they were cared for and disciplined in state prisons. But there can be no doubt that it is becoming the fashion for state prisoners to bring these suits. The totals for state prisoner civil rights suits commenced in the federal courts of the Second Circuit for the past six fiscal years[3] tell the story-
 
 
 43
 All but 38 of the 585 cases filed in 1971 were filed in the four districts of New York. While these totals for state prisoner civil rights suits are still less than those for state prisoner habeas corpus petitions in the Second Circuit, which have risen from 571 to 813 in those same years, it should be borne in mind that a very high percentage of the habeas corpus petitions can be, and are, disposed of on the face of the petition or after submission of a paper record. By contrast, a very large percentage of Civil Rights Act cases can be disposed of only after a hearing at which the petitioner and others will be produced as witnesses. In the habeas corpus cases a record has already been made in the state court, whereas civil rights cases always raise issues which have recently arisen and are wholly undetermined.
 
 
 44
 It is now quite clear that state prisoners are turning more and more to the Civil Rights Act to redress their grievances and for therapeutic relief, rather than to habeas corpus. They not only hope to get an earlier hearing but they also expect a vacation from prison confinement. Unless the district courts can, in the exercise of discretion, stay their hands pending determination of suit in those state courts which will hear the cases, the federal courts will find themselves in the business of running and regulating state prisons.
 
 
 45
 If the course I propose is followed, certainly it would still be open to the state prisoner to ask the federal court to examine his complaint de novo, upon a showing that the state court hearing had not been a full and fair one. Cf. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and 28 U.S.C. Sec. 2254(d).
 
 
 46
 For the above reasons, I would direct the district courts in the three cases before us to stay action until the state court has passed upon the matters complained of by these state prisoners.
 
 
 
 [1]
 I fully agree with my brother Friendly, for the reasons stated in his opinion, that abstention would be wholly inappropriate here
 
 
 [2]
 I agree with the views expressed by my brothers in their separate concurrences with this opinion
 
 
 [1]
 See Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (Dec. 14, 1971)
 
 
 [2]
 See Civil Rights Law Sec. 79-c, McKinney's Consol.Laws c. 6, which was added in response to this court's decision in Wright v. McMann, 387 F.2d 519 (2 Cir., 1967). This amendment, "remedial in nature, designed to correct an imperfection in the prior law or to provide a remedy for a wrong if none previously existed, is to be liberally construed so as to spread its beneficial results as widely as possible . . . ." Marcelin v. Scott, 33 A.D.2d 588, 304 N.Y.S.2d 299, 300-301 (1969)
 
 
 [3]
 These figures are a breakdown of the national totals reported in Table 14 in the 1971 Criminal Report of the Director of the Administrative Office of the United States Courts, prepared by the Division of Information Systems of the Administrative Office
 1966 21
1967 62
1968 72
1969 138
1970 277
1971 585