Lawrence KOCHIE

v.

John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut.

Paul WHITE

v.

BUREAU OF PRISONS, N.A.R.A. Staff, and Mel Klein.

Civ. A. Nos. B–469, B–515.

United States District Court, D. Connecticut.

June 1, 1972.

Lawrence Kochie, and Paul White, pro se.

Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Two inmates at the Federal Correctional Institution at Danbury have filed petitions in unrelated cases, both of which present a basic issue concerning the proper role of a Federal District Court in considering prisoner complaints about the internal administration of a prison. Neither petition challenges the validity of the conviction for which petitioners are incarcerated, nor is there any complaint concerning the computa-

tion of the sentence to be served. Petitioner White complains that he was arbitrarily denied the opportunity to work in Prison Industries. Petitioner Kochie complains that he has not been allowed to wear inside the prison medically prescribed shoes which he is permitted to wear when outside the prison on work release.[1]

In recent years courts have been flooded with prisoner complaints about the internal administration of a prison. The complaints range from the totally frivolous to those which raise substantial constitutional questions. The task for courts is to fashion some procedure which will insure that the substantial claims receive careful consideration while the insubstantial claims are summarily rejected. Such a procedure should also insure that prison authorities themselves give appropriate consideration to all complaints concerning prison administration with court intervention reserved only for those extraordinary situations where a substantial right of the prisoner is fairly in issue.

A key element of such a procedure must be the doctrine of exhaustion of administrative remedies. Application of this doctrine to this area of complaints has obvious advantages. It insures that those officials charged with the administrative responsibility have a fair chance to know of the grievance and act to correct it if correction is warranted. It also insures that when courts are asked to intervene, they have presented both the prisoner's complaint and a written response from the prison officials. Under current practice in a large portion of cases the courts must initiate requests for responsive papers from the prison authorities. It would certainly be more expeditious to have such papers available when the petition is first presented. Thus in many cases the issue is simply whether administrative remedies will be exhausted by the pris-

1. A response by the Government to Kochie's petition alleges that the initial refusal to allow wearing of the shoes inside the prison was the result of a mis-
understanding which has since been cleared up and that such wearing is now permitted.

oner before he files his papers or by the Court afterwards.

■ Some might think exhaustion of administrative remedies need not be relied upon in cases of the sort presented by these two petitions because the complaints could be dismissed for failure to state a claim on which relief can be granted. But that course, while often employed by courts, risks losing the needle of a meritorious complaint in a haystack of frivolous ones. Even these complaints might be meritorious if in fact there was a completely arbitrary refusal to permit White to work in Prison Industries, or if in fact there was a deliberate and unjustified refusal to permit Kochie to wear medically required shoes. As with the "trip to Baghdad," Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Homer v. Richmond, 110 U.S.App.D.C. 226, 292 F. 2d 719, 722 (1961), there are many prison opportunities the government need not provide at all, but at least as to some significant ones, it cannot, consistent with due process, act arbitrarily to deny eligible prisoners an available opportunity. Prisoners have not lost the right to elemental fairness from their government, even though the necessities of prison management obviously require recognition of some unreviewable administrative discretion.

Another reason to invoke exhaustion of administrative remedies rather than to dismiss the claim as submitted is that many petitions fail through poor drafting to alert courts fully to whatever merit they may contain. Requiring initial complaint to prison administrators will produce written responses that can be expected to highlight the real issue, if there is one, as well as demonstrate the absence of such an issue. A written response to petitioner White's complaint, for example, may well show that the decision to deny him access to Prison Industries was not arbitrary, and no more need be shown.

Despite the common-sense appeal of requiring some elementary exhaustion of administrative remedies, a series of recent Supreme Court decisions contains language suggesting that the doctrine of exhausting administrative remedies is not to be invoked to defeat the vindication of constitutional rights in a Federal District Court. It is not entirely clear, however, whether the sweep of those decisions is really intended to eliminate even elementary exhaustion requirements in the context of prisoner complaints. A review of the cases indicates that the precise holdings have never dispensed with a requirement that prison officials be given the initial opportunity to consider prisoner complaints which are within their full competence to correct.

Monroe v. Pape, 365 U.S. 167, 180–183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), decided that a cause of action for damages for denial of civil rights could be maintained in a federal court pursuant to 42 U.S.C. § 1983 notwithstanding the availability of a similar remedy in a state *court*. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), decided that § 1983 actions could be maintained despite the plaintiffs' failure to pursue a state remedy that required both *court* and *administrative* action. The Court's opinion pointed out that the purposes of § 1983 would be defeated "if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court." *Id.* at 672, 83 S.Ct. at 1436. When the Court turned to the *administrative* aspect of the state remedy, it refused to require resort to the remedy because of its inadequacy in the circumstances. Significantly the Court observed that the pertinent administrative official, the Superintendent of Public Instruction, "has no power to order corrective action." *Id.* at 675, 83 S.Ct. at 1437. He could only take steps leading to a remedy in a state court action, a requirement Monroe v. Pape, *supra,* had already dispensed

with. The only authority the Superintendent could exercise on his own, withholding of state aid, was deemed to be too "tenuous" a protection for constitutional rights to require prior resort to state proceedings. Surely this decision did not dispense with the requirement of pursuing state administrative remedies which are available to correct completely the alleged grievance.

Then came Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). In a brief *per curiam* opinion, the Court held that claimants to welfare benefits could not be denied a federal court hearing on their § 1983 complaint for failure to exhaust state *administrative* remedies. Reliance was placed on *Monroe* and *McNeese.* Of the latter, the Court said, "we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy,' *id.,* 373 U.S. at 671, 83 S.Ct. at 1435." (brackets original). The page reference cites that portion of *McNeese* in which the Court had rejected a requirement of pursuing state *court* remedies. Even if the interpolation of the word "administrative" was warranted, it could at most refer to the type of administrative remedy rejected in the later portion of the *McNeese* opinion—namely, a remedy which is either beyond the power of the administrator or which cannot provide adequate protection to the right allegedly impaired. In *Damico* plaintiffs challenged a state regulation as unconstitutional, a grievance normally beyond the authority of administrators to correct.

The Court then took the word "administrative" out of its brackets in Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), where a state prisoner, suing under § 1983, had been denied relief for failure to exhaust only administrative remedies. The Supreme Court reversed, holding that in the circumstances of that case requiring exhaustion of administrative remedies would be "to demand a futile act." *Id.*

at 640, 88 S.Ct. 2120. But the *per curiam* opinion then added this sentence:

"In any event, resort to these remedies is unnecessary in light of our decisions in Monroe v. Pape, 365 U.S. 167, 180–183, 81 S.Ct. 473, 482, 5 L. Ed.2d 492; McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435; and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647."

That this dictum did not refer only to futile administrative remedies was suggested by still another dictum in another *per curiam* decision, when the Court in Wilwording v. Swenson, 404 U.S. 249, 252, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971), said of *Houghton:*

"Although the probable futility of such administrative appeals was noted, we held that in 'any event, resort to these remedies is unnecessary.' "

*Houghton* reversed a lower court decision that had required a state prisoner seeking relief under § 1983 to pursue state *court* remedies. The lower court opinion did make a passing reference to "the state structure of government from the governor on down," but the point of the decision had been that state courts, rather than state administrators, should review such complaints before federal court adjudication. Wilwording v. Swenson, 439 F.2d 1331, 1336 (8th Cir. 1971).

Thus while some of the language of the decisions in *Damico, Houghton* and *Wilwording* seems to suggest that state administrative remedies never need be exhausted before § 1983 complaints can be litigated in a federal district court, their holdings are far more limited. The main holding of these decisions is that state *court* remedies need not be exhausted. It was that holding which the Second Circuit felt obliged to follow in Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir. 1972). Where *administrative* remedies have been involved, a requirement of their use has been rejected in narrow circumstances: where the constitutionality of a regulation is challenged, Dam-

ico v. California, *supra*; where the administrator alone cannot remedy the grievance, McNeese v. Board of Education, *supra;* and where resort to the administrative remedy is futile, Houghton v. Shafer, *supra.*

Indeed the Court itself has viewed *Damico* and *McNeese* as dispensing with exhaustion requirements when the constitutional claim presented is "substantial." King v. Smith, 392 U.S. 309, 312, n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). *See also* Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). No decision of the Supreme Court squarely holds that the complaint of a state prisoner, which, if well-founded, is capable of prompt and complete redress by an administrative official, can be brought directly into a federal district court under § 1983 without any attempt at exhaustion of administrative remedies. I am reluctant to believe the law is otherwise, at least until dismissal for failure to exhaust that type of administrative remedy is held to be improper.

For example, in one of the cases now before me the prisoner complains that he may not wear medically required shoes. Am I to conclude that the Supreme Court wants this prisoner to come directly to a federal district court for the right to wear his shoes without having even asked the warden to reverse the decision of the prisoner's caseworker? And if the warden should say no, should not the Bureau of Prisons be asked to say yes?

■ This is not to suggest that requiring exhaustion of administrative remedies should be an unyielding principle. Consideration should always be given to the gravity of the matter complained of and the realistic availability of a prompt and effective administrative remedy.

■ Even in the unlikely event the exhaustion of administrative remedies requirement were to be abandoned for all state prisoner complaints under § 1983, such a rule would not automatically require consideration of the merits of the complaints in the pending cases. These prisoners are federal prisoners complaining about the actions of federal officials. They have no cause of action under § 1983, which is available only against state officials. *See, e. g.*, Wolf v. Chatterton, 313 F.Supp. 154 (W.D. Mo.1970). While it might seem anomalous to require exhaustion of administrative remedies by federal prisoners if it is not required of state prisoners, that anomaly already exists by virtue of the absence of a federal counterpart to § 1983. For example, a complaint for damages against unlawful action by a federal law enforcement officer must establish the $10,000 jurisdictional amount of 28 U.S.C. § 1331(a), *see* Bivens v. Six Unknown Federal Narcotic Agents, 403 U.S. 388, 398, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), whereas a similar complaint against state officers requires no dollar jurisdictional amount under 28 U.S.C. § 1343(3), Monroe v. Pape, *supra.*[2] Thus, regardless of the reach of *Wilwording*, these plaintiffs are not exempted from the requirement of exhausting administrative remedies, and the nature of their grievances makes it especially appropri-

2. The jurisdictional basis for these petitions by federal prisoners complaining of internal conditions in a federal prison is not entirely clear. Such claims will rarely satisfy the $10,000 jurisdictional amount of 28 U.S.C. § 1331. If the complaint alleges denial of a right because a prison administrator has failed to perform a ministerial duty, 28 U.S.C. § 1361 would provide jurisdiction for a writ of mandamus, but non-performance of ministerial duties is too narrow a category to encompass all actions by federal prison administrators that might deny federally protected rights. An adequate jurisdictional basis would seem to be provided by 28 U.S.C. § 2241, which empowers the district courts to grant writs of habeas corpus to any prisoner in custody in violation of the Constitution or laws of the United States. Chief Judge Friendly has recently observed that "all state prisoner petitions complaining of the length or manner of custody, however phrased, are in fact petitions for habeas corpus 'in behalf of a person in custody

ate to invoke that doctrine. Their complaints, if justified, can be speedily corrected by administrative action.

For federal prisoners complaining of internal administrative matters, there unfortunately has not been promulgated by the Department of Justice an administrative procedure of general applicability. Nevertheless a rudimentary administrative procedure does exist which should be followed, at least until the appropriate officials develop a more satisfactory procedure. The procedure requires simply the submission of the grievance in writing to an official of the prison and also to the Director of the Bureau of Prisons.

As a first step, a prisoner should submit his complaint in writing to some official of the institution in which he is incarcerated. There may be special situations where the nature of the complaint is such that the prisoner feels his rights would be prejudiced or he would otherwise be adversely affected if it were known within the institution that he is making a complaint. The second step, which should be followed in all cases, avoids this problem. If the prisoner's complaint is not satisfactorily handled

within the institution or if he can show valid reason for not bringing his complaint to the attention of the institution, the prisoner should then make his complaint in writing to the Director of the Bureau of Prisons through the Prisoner's Mail Box, a channel by which uncensored complaints can be brought to the director's attention.[3]

Having taken these two steps (or having some valid reason for omitting the first step), the prisoner should then furnish to the Court, with his petition, the written responses he has received. If he has received no response after a reasonable interval, his papers should report that fact. If he has some valid reason for complaining only to the Bureau of Prisons, his papers should disclose to the Court why he failed to make any complaint within the prison.

Of course, an administrative remedy cannot be effective if its availability and the requirement of its use are not known. The warden of the Federal Correctional Institution at Danbury, who is the defendant in the first case, might wish to develop some appropriate way to bring to inmates' attention the two-step requirement of written com-

pursuant to the judgment of a state court . . . on the ground that he is in custody in violation of the Constitution or laws of the United States.'" Rodriguez v. McGinnis, 456 F.2d 79 (2d Cir. 1972). He relied upon 28 U.S.C. § 2254, the specific habeas corpus provision for state prisoners. Section 2241, the general habeas corpus provision, contains an identical ground for relief, i.e., "custody in violation of the Constitution or laws . . . of the United States," which is equally available for complaints by federal prisoners about "the length or manner of custody, however phrased." While *Rodriguez* bowed to *Wilwording* in recognizing that a state prisoner can avail himself of § 1983 to complain of internal prison conditions, Judge Friendly's point that a habeas corpus petition is an appropriate writ for complaining about "manner of custody" retains its validity. The habeas corpus jurisdiction of § 2241 should therefore remain available to federal prisoners complaining of internal conditions, since they do not have the option of state prisoners to sue under § 1983. Indeed, the

availability of § 2241 for such complaints is underscored by the fact that complaints by federal prisoners attacking their federal convictions are, with rare exception, removed from the general provisions of § 2241 by § 2255.

3. The Prisoner's Mail Box is described in "Federal Prisons—1946, A Report Of The Work Of The Federal Bureau Of Prisons" at page 17. Among the first decisions to point out the availability of this remedy was Lowe v. Hiatt, 77 F. Supp. 303 (M.D.Pa.1948). That decision and its suggested remedy were relied upon in Green v. United States, 283 F.2d 687 (3d Cir. 1960). Subsequently, many decisions have rejected prisoners' complaints for failure to exhaust administrative remedies and cited *Green* without specifying what remedy the prisoner should have exhausted. See, e. g., Light v. United States, 430 F.2d 932 (5th Cir. 1970).

The current procedures concerning the operation of the Prisoner's Mail Box are contained in Policy Statement 7300.2A of the Bureau of Prisons.

plaints outlined in this decision and the fact that use of this procedure will normally be required before this Court will consider complaints concerning any aspect of prison life, except the legality of a prisoner's conviction or the proper computation of the time he must serve.

Accordingly, leave is granted to proceed in forma pauperis and the petitions in both cases are dismissed for failure to exhaust administrative remedies.