**Walter PYLES a/k/a Sonni Pyles and Charles Pyles a/k/a Timbuk Pyles, Plaintiffs,**

v.

**Detective John KEANE et al., Defendants.**

**No. 72 Civ. 382 (WCC).**

United States District Court, S. D. New York.

March 11, 1976.

Walter Pyles a/k/a Sonni Pyles, Charles Pyles a/k/a Timbuk Pyles, pro se.

W. Bernard Richland, Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

CONNER, District Judge:

Plaintiffs, currently incarcerated pursuant to State court convictions for robbery, seek a declaratory judgment and money damages for alleged violations of their civil rights, under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988.[1] Jurisdiction over their claims is grounded on 28 U.S.C. §§ 1341 and 1343. Defendant Keane has moved to dismiss, pursuant to Rule 12(b) F.R.Civ.P., and has moved, in the alternative, for summary judgment pursuant to Rule 56 F.R.Civ.P.

### I.

At the outset, this Court must observe that the motions before it stand in an un-

---

1. It is clear at the outset that plaintiffs have not stated any cause of action under Sections 1981, 1985, 1986 or 1988. Although plaintiffs are black, their complaint does not suggest that they have been denied their civil rights because of their race. Section 1981 provides a basis for relief only in the case of racial discrimination. See, e. g., *Agnew v. City of Compton,* 239 F.2d 226, 230 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957); *Olson v. Rembrandt Printing Co.,* 375 F.Supp. 413, 417 (E.D.Mo.1974), aff'd, 511 F.2d 1228 (8th Cir. 1975); *Stambler v. Dillon,* 288 F.Supp. 646, 649 (S.D.N.Y.1968). The complaint does not state a cause of action under Section 1985 because plaintiffs have not alleged that they were victims of class discrimination. See, e. g., *Lewis v. Brautigam,* 227 F.2d 124, 127–28 (5th Cir. 1955); *Dunn v. Gazzola,* 216 F.2d 709, 711 (1st Cir. 1954); *Lombardi v. Peace,* 259 F.Supp. 222, 225 (S.D.N.Y.1966). Nor, therefore, is a claim stated by plaintiffs under Section 1986, which applies only when violations of Section 1985 may be shown. Section 1988 does not create an independent cause of action. Accordingly, plaintiffs might be afforded relief in this case only under Section 1983.

common procedural posture, *i. e.,* plaintiffs have not, to date, submitted any papers in direct response to the merits of those motions. Rather, in a series of letters to this Court, plaintiffs have asked for (and have received) several extensions of their time to answer and have further requested that counsel be appointed to act on their behalf in the prosecution of the present action.

Although plaintiffs had been represented by counsel at the time the instant complaint was framed and filed, their attorneys subsequently moved to be relieved;[2] that motion was granted by Judge Bauman, to whom the action had been originally assigned. On July 2, 1974, this Court appointed substitute counsel who had agreed to represent plaintiffs on a *pro bono* basis; thereafter, she too requested, and was granted, leave to withdraw from the case.[3] Since that time, plaintiffs have made repeated requests that new substitute counsel be appointed. Each time, plaintiffs have cited *McClain v. Manson,* 343 F.Supp. 382 (D.Conn.1972), for the proposition that the appointment and compensation of counsel for a civil rights action plaintiff is authorized under the Criminal Justice Act. By letter dated April 22, 1975, the Court advised plaintiffs that, as acknowledged in *McClain* itself, " 'there is no provision for appointment [of counsel] when prisoners present claims under § 1983'." This Court further noted that counsel had nevertheless been appointed in *McClain* on the ground that

> " 'the statutory reference selected by prisoners untutored in the law should [not] determine whether their court-appointed attorneys receive compensation' and 'there seems to be no reason to ignore the essential habeas corpus nature of these petitions for purposes of the Criminal Justice Act'."

Thus, as this Court explained to plaintiffs, "counsel was appointed in *McClain* pursuant to 18 U.S.C. § 3006A(g), which makes the appointment of counsel in habeas corpus cases discretionary with the district court when it is determined that the interests of justice so require. Unlike [the complaint in] the *McClain* case, the complaint in your case was framed by a team of three attorneys who were serving as your counsel at that time. Under these circumstances, it would be impossible to appoint counsel in your case pursuant to the Criminal Justice Act."

In another letter to plaintiffs, this Court suggested that plaintiffs contact the Prisoners' Rights Project for assistance in obtaining legal representation. Whatever steps that plaintiffs may have taken in this regard, they apparently have not been able to secure counsel to date. Despite plaintiffs' insistence that they require additional extensions of time to answer the present motions and that a decision thereon, in the absence of answering papers, would necessarily be "unbalanced," this Court cannot further defer the disposition of those motions, filed almost one year ago. Plaintiffs may nonetheless take some solace from this Court's observation that the quality of defendants' own submissions on these motions reflects an effort of so little moment that the adversary scales are not so heavily weighted against plaintiffs as might ordinarily be expected.

## II.

The present action has its roots in the March 6, 1971 arrest and subsequent detention of plaintiffs on robbery and related charges resulting in a series of criminal indictments. The complaint alleges that defendants, as police officers acting under color of state law, subjected plaintiffs to unlawful search, seizure, and detention and to unconstitutional out-of-court identifications and deprived plaintiffs of their right to counsel. Defendant Keane challenges

---

**2.** In their affidavit on that motion, the attorneys cited as their grounds for withdrawal "plaintiffs' prior discharge of their attorneys [in their criminal defense] as well as [plaintiffs'] consistent rejection of advice concerning the merits of the present action."

**3.** In support of her motion to be relieved as plaintiffs' counsel, the court-appointed attorney echoed former counsels' references to plaintiffs' intransigence and refusal to cooperate.

these allegations on two grounds. First, defendant argues, so far as those allegations are intended to attack plaintiffs' convictions, they must be regarded as a petition for a writ of habeas corpus and therefore cannot be entertained by this Court unless and until plaintiffs have exhausted their state remedies. This argument need not detain us long: as indicated above, the complaint before this Court gives rise squarely and solely to a civil rights action, for which there is no exhaustion requirement. See, e. g., *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Rodriguez v. McGinnis,* 456 F.2d 79 (2d Cir. 1972) (*en banc*); *Sostre v. McGinnis,* 442 F.2d 178, 182 (2d Cir. 1971) (*en banc*), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

Second, according to defendant, plaintiffs' claims are presently barred by the operation of collateral estoppel. Defendant contends that the collateral estoppel principle applies herein for the following reasons:

1) after a suppression hearing held prior to plaintiffs' trial on one of the above-mentioned indictments, a decision was rendered by New York Supreme Court Justice Ivan Warner, wherein defendants' March 6, 1971 searches, seizures, and arrests of plaintiffs in the latters' respective apartments were ruled to have been lawfully executed; and

2) on November 7, 1973, plaintiff Charles Pyles entered a plea of guilty to the crime of Robbery in the Third Degree. That plea covered indictments which referred, *inter alia,* to the robbery of one William Callahan, whose "show-up" confrontation with plaintiffs subsequent to their arrest is among the subjects of the present complaint.

■ Although Rule 12(b) F.R.Civ.P. does not expressly prescribe collateral estoppel as a ground for pretrial dismissal, "it is generally held that, in the interest of efficient and expeditious judicial administration, *res judicta* [and, as a corollary, collateral estoppel] can be raised and considered" via pre-trial motion to dismiss. *Thistlethwaite v. City of New York,* 362 F.Supp. 88, 91 (S.D.N.Y.1973), *aff'd,* 497 F.2d 339 (2d Cir. 1974).

### III.

■ The doctrine of collateral estoppel forecloses a party from relitigating, with respect to one cause of action, an issue that has already been determined against him by an earlier judgment on another cause. In civil actions generally, such preclusion applies to an issue that has been determined adversely to the defendant in a prior State or federal criminal proceeding. See, *e. g., Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *Local 167, International Brotherhood of Teamsters v. United States,* 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804 (1934); *Thistlethwaite v. City of New York,* 497 F.2d 339 (2d Cir. 1974); *Rosenberg v. Martin,* 478 F.2d 520 (2d Cir. 1973). As has recently been confirmed by this Circuit, "under modern notions with respect to issue preclusion, it is of no moment that the adverse party in the criminal case was the State rather than the police officer[s] who [are] the defendant[s] here." *Rosenberg v. Martin, supra,* at 525.

■ Although there remains some question whether collateral estoppel applies in a *civil rights* action where issue preclusion is based upon a prior State criminal judgment, see *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting); *Lauchli v. United States,* 405 U.S. 965, 92 S.Ct. 1182, 31 L.Ed.2d 241 (1972) (Douglas, J., dissenting from denial of certiorari), it appears to be settled in the majority of Circuits, including our own, that issue preclusion may indeed apply in such a case. *Mastracchio v. Ricci,* 498 F.2d 1257 (1st Cir. 1974); *Thistlethwaite v. City of New York, supra; Williams v. Liberty,* 461 F.2d 325 (7th Cir. 1972); *Metros v. United States District Court,* 441 F.2d 313 (10th Cir. 1971); *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Shank v. Spruill,* 406 F.2d 756 (5th Cir. 1969).

Both plaintiffs had a full and fair opportunity, at the State suppression hearing, to litigate their claims with respect to the searches, seizures and arrests of March 6, 1971; the decision on that hearing established that the searches and seizures were lawfully executed and the arrests, for a series of robberies, were grounded on probable cause. Having been resolved against plaintiffs under such circumstances, those claims cannot be tried anew in this Court.[4]

### IV.

As indicated above, plaintiffs' remaining claims are grounded on events following plaintiffs' arrests; those claims were not among the subjects of the State court suppression hearing, see Hearing Transcript at 856–57, and thus have not been foreclosed by the decision rendered on that hearing.

At this juncture, for the sake of clarity, it is appropriate to recite the substance of plaintiffs' remaining claims:

1) both plaintiffs allege that they were subjected, on March 6, 1971,[5] to a stationhouse "show-up" confrontation with William Callahan during which they were denied the assistance of counsel and that the identification procedure was impermissibly suggestive, in that, according to the complaint, plaintiffs were viewed "through a one-way mirror, while Detective Keane, who was also present in the room, displayed a shotgun [used during a series of earlier robberies] to [identifying witnesses] on the opposite side of said one-way mirror * * *";

2) plaintiff Walter Pyles alleges that, prior to the contested "show-up," defendant Keane, without probable cause, executed an affidavit charging Walter Pyles with the robbery and assault of William Callahan. According to Count IX of the complaint herein, that charge was brought only after defendants had urged Walter Pyles to sign a statement implicating his brother Charles in a number of unsolved crimes and Walter Pyles had refused to do so. Walter Pyles thus apparently assumes and, by implication, charges that the affidavit signed by defendant Keane was either a coercive stratagem or an act of malice. Although the complaint indicates that Walter Pyles was arraigned on that charge, it does not allude to any subsequent history.

Although this Court is always mindful that the averments of a *pro se* complaint are to be read with liberality, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the present complaint was, as already noted, drafted by attorneys rather than by plaintiffs themselves. Accordingly, the complaint must be held to the standard by which formal pleadings are ordinarily measured.

For present purposes, plaintiffs' claims cannot be held insufficient unless it appears beyond question that plaintiffs can prove no set of facts in support of those claims that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, at this procedural stage, plaintiffs' factual allegations, as recited above, must be deemed to be true. *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Escalera v. New York City Housing Authority*, 425 F.2d 853, 857 (2d Cir. 1970). Notwithstanding these strictures, however, this Court must conclude that none of plaintiffs' claims can withstand a motion to dismiss.

### V.

Measured against the leading decisional authorities on the Sixth Amendment "right to counsel" guarantee "made obliga-

---

4. Collateral estoppel would not, of course, bar plaintiffs from attacking the State court's judgment by way of habeas corpus. Were such attack successful, plaintiffs would no longer be foreclosed by collateral estoppel from prosecuting those of their civil rights claims that are presently barred.

5. A Wade-Gilbert hearing had been held in the State court prior to plaintiffs' criminal trial, but that hearing and the decision thereon were addressed to out-of-court identifications occurring only on March 16, 1971.

tory upon the States by the Fourteenth Amendment," *Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), plaintiffs' assertion that they were denied the assistance of counsel at the March 6, 1971 "show-up" falls short of stating a deprivation of constitutional magnitude. To be sure, the Supreme Court's rulings in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), have established that, at least after "adversary judicial criminal proceedings" have been instituted, *Kirby v. Illinois, supra,* at 689, 92 S.Ct. 1877, a lineup or "show-up" is a critical stage of criminal prosecution, at which the accused is entitled to the aid of counsel. Thus, as the *Wade* Court observed, "[t]he presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution." 388 U.S. at 227, 87 S.Ct. at 1932.

■ However, *Wade, Gilbert,* and their antecedents are concerned only with the exclusion of evidence tainted by the absence of counsel at pretrial stages of prosecution. Those decisions, uniformly addressed to post-conviction applications for relief, do not sustain plaintiffs' claim that the absence of counsel during their "show-up" experience was *per se* a constitutional deprivation. A thorough reading of the relevant opinions impels the conclusion that the Sixth and Fourteenth Amendments are not violated in such a case unless or until the denial of counsel has impacted upon the accused's defense at trial via the admission of evidence tainted by that denial. For those opinions make it clear that the Amendments' guarantee is fixed squarely on the right of the accused to have "a fair opportunity to present a defense at the trial itself." *United States v. Wade, supra,* at

226, 87 S.Ct. at 1931. Thus, as the Supreme Court noted in *Wade,*

"the principle of *Powell v. Alabama* [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158] and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." 388 U.S. at 227, 87 S.Ct. at 1932. (emphasis in original).

See *Stovall v. Denno,* 388 U.S. 293, 297–98, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Escobedo v. Illinois,* 378 U.S. 478, 491, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). See also *Tehan v. United States* ex rel. *Shott,* 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

■ The present complaint neither states nor suggests that plaintiffs suffered convictions after a trial or trials at which the tainted "show-up" evidence was admitted against them.[6] Nor apparently could it truthfully so state; as previously noted, it is undisputed that Charles and Walter Pyles were tried only on unrelated charges, without testimony of witnesses who had attended the allegedly suggestive "show-up." As discussed above, this is fatal to plaintiffs' claims.

■ The constitutional guarantee against a pretrial confrontation "that is unnecessarily suggestive and conducive to irreparable mistaken identification," *Kirby v. Illinois, supra,* 406 U.S. at 691, 92 S.Ct. at 1883, like the right to counsel, does not exist *in vacuo*; rather, that guarantee is meaningful only by reference to the right of an accused to a fair trial, of which it is a corollary. Thus, in an analogous case, Supreme Court Justice Stevens, then sitting on the Seventh Circuit Court of Appeals, rejected the suggestion that "the Due Process Clause * * * provide[s] broad generalized protection against misdeeds by the police or prosecution" and concluded that "the mission of the clause * * * [is]

---

**6.** It is not clear from the complaint, in any event, that the March 6, 1971 identification

procedure occurred at one of the "critical stages" described in Kirby.

avoidance of an unfair trial to the accused, and no violation * * * result[s] unless the misconduct had some prejudicial impact on the defense." *Christman v. Hanrahan,* 500 F.2d 65, 67 (7th Cir. 1974); *cf. Ambrek v. Clark,* 287 F.Supp. 208, 210 (E.D.Pa.1968).

Beneath the surface of *Wade, Gilbert, Escobedo,* and kindred decisions lies at least one common root: the shared assumption that "[a] conviction which rests on a mistaken identification is a gross miscarriage of justice." *Stovall v. Denno, supra,* 388 U.S. at 297, 87 S.Ct. at 1970. Because plaintiffs do not allege that they have been the victims of such a miscarriage, and apparently could not truthfully do so, their Sixth and Fourteenth Amendment claims must fall.

## VI.

The above dispositions make it unnecessary to discuss defendant's argument with respect to the collateral estoppel effects of Charles Pyles' plea of guilty to the Callahan robbery. However, there remains to be considered Walter Pyles' allegations with respect to the formal charge lodged against him, on March 6, 1971, by defendant Keane. In view of my earlier rulings in this Memorandum, whether those allegations are cognizable under the Civil Rights Act is critical to this Court's subject matter jurisdiction.

▮▮▮ Although Walter Pyles' remaining claim falls short of stating a cause of action for malicious prosecution,[7] it is at least closely analogous to that common law tort. Conduct that may give rise to an action for malicious prosecution may also constitute a violation of Section 1983 if, acting under color of state law, the defendant has thereby subjected the plaintiff to a deprivation of constitutional magnitude. See *Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963). But, standing alone, a claim for malicious prosecution—although it may describe conduct reprehensible in the extreme—is not enough to support a cause of action under Section 1983. Thus, as the

Fifth Circuit observed in *Curry v. Ragan,* 257 F.2d 449, 450 (5th Cir.), *cert. denied,* 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958), "[n]either the Fourteenth Amendment nor the Civil Rights Acts purport to secure a person against unfounded or even malicious claims or suits in state courts." *United States ex rel. Rauch v. Deutsh,* 456 F.2d 1301 (3d Cir. 1972); *Hahn v. Sargent,* 388 F.Supp. 445 (D.Mass.1975); see *Paskaly v. Seale,* 506 F.2d 1209, 1212 (9th Cir. 1974); *Nesmith v. Alford, supra,* at 126; *cf. Yglesias v. Gulfstream Park Racing Ass'n, Inc.,* 201 F.2d 817, 818 (5th Cir. 1953).

▮▮▮ The complaint before us, notwithstanding its conclusory references to the denial of due process, fails to identify a single constitutional deprivation suffered by Walter Pyles as a result of the affidavit signed by defendant Keane. As explained in an earlier portion of this Memorandum, collateral estoppel bars plaintiff from charging, *inter alia,* that his arrest was undertaken by defendants without probable cause. Collateral estoppel thus effectively mutes any hint in the complaint that Walter Pyles was unconstitutionally denied his liberty; the State court ruling that is still in force conclusively establishes that Walter Pyles had been lawfully placed in custody with respect to crimes unrelated to the robbery that was the subject of defendant Keane's allegedly baseless charge. Moreover, the coercive purpose of the charge, as suggested in the complaint, refers only to Walter Pyles' refusal to incriminate his brother; that reference thus in no aspect reflects a possible violation of Walter Pyles' constitutional privilege not to incriminate himself. Therefore, having failed to allege that defendants have in some manner deprived him of some right, privilege or immunity secured by the Constitution, Walter Pyles has not stated a federal claim that might be entertained by this Court.

For the foregoing reasons, the motion to dismiss is granted.

SO ORDERED.

---

7. Walter Pyles has not alleged that the prosecution of that charge terminated in his favor. "Termination of the proceeding in favor of the accused" is a necessary element of a cause of action for malicious prosecution. Prosser, Torts § 119, at 835 (4th ed. 1971).