**UNITED STATES GENERAL, INC., a
Wisconsin Corporation, Plaintiff,**

**v.**

**Ralph SCHROEDER, d/b/a Schroeder Oil
& Excavating and William F.
Gansen, Defendants.**

No. 75–C–203.

United States District Court,
E. D. Wisconsin.

Sept. 17, 1975.

714

John P. Brady, Weiss, Steuer, Berzowski & Kriger, Milwaukee, Wis., for plaintiff.

Ernest J. Philipp, Otjen, Philipp & Van Ert, S. C., Milwaukee, Wis., for Schroeder.

Jack R. Wiedabach and Donald M. Lieb, Prosser, Wiedabach, Lane & Quale, S. C., Milwaukee, Wis., for William F. Gansen.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is an action commenced by the plaintiff named above in an effort to obtain injunctive relief and monetary damages to compensate losses allegedly sustained as a result of an unconstitutional garnishment action instituted against it in Branch One of the Shawano-Menominee County Court, Shawano County, Wisconsin. The defendants include the individual plaintiff named in that garnishment proceeding, Ralph Schroeder d/b/a Schroeder Oil & Excavating (Schroeder), as well as the attorney that prosecuted the action in his behalf, William F. Gansen (Gansen). The plaintiff's cause of action is said to arise under the provisions of § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983. Jurisdiction lies, if at all, pursuant to 28 U.S.C. § 1343.

Counsel for defendant Schroeder has answered the principal complaint. He admits that jurisdiction lies under 28 U.S.C. § 1343, and cross-complains against defendant Gansen seeking indemnification for any losses sustained here.

No answer has been filed on behalf of defendant Gansen, rather a motion has been brought under Rule 12(b)(6), Federal Rules of Civil Procedure, charging that the complaint fails to state a claim against him. It is this motion for dismissal to which this memorandum opinion is addressed. The sole issue concerns the question of whether, in the context of this case, this attorney can be said to have acted under color of state law within the meaning of 42 U.S.C. § 1983.

■■ The Court notes that, for purposes of resolution of a motion based upon Rule 12(b)(6), the allegations set

forth in the pleading are to be construed in the light most favorable to the pleader and accepted as true. The Court is not permitted to delve into extraneous evidence, but must confine the scope of its analysis to matters presented by the pleadings, memorandums, briefs and oral arguments. *See,* 5 Wright & Miller, Federal Practice and Procedure: Civil §§ 1363, 1366 at pp. 656, 682 respectively (1969 ed.). It is thought that an action, especially one brought pursuant to the Civil Rights Act, is not to be dismissed at the pleading stage unless it appears to a certainty that no relief can be granted to the plaintiff under any state of facts which might be proved in support of his claims. *See, e. g., Flores v. Yeska,* 372 F.Supp. 35, 39 (E.D. Wis. 1974).

After due consideration of those materials to which the Court may properly direct its attention, as viewed from the perspective required by the liberal standards outlined above, the Court finds that this complaint has in fact stated a legitimate claim against defendant Gansen; his motion for dismissal is thus to be denied, in accordance with the terms of the following memorandum opinion.

## I.

In order to achieve a thorough understanding of the contentions presented by these parties, it is necessary to briefly review the rather tortured history of § 267.02 Wis.Stats., the Wisconsin garnishment statute upon which the events leading to this action were based.

On June 9, 1969 the United States Supreme Court ruled that, as applied to the prejudgment garnishment of an individual's wages, § 267.02(1)(a) Wis. Stats. was unconstitutional for want of certain fundamentals of procedural due process. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

Shortly after this decision was rendered, the Wisconsin legislature attempted to cure the defects the Supreme Court had noted by amending § 267.02 at subsection (2). The revised statute, effective August 9, 1969, restricted the ability of a civil plaintiff to commence a garnishment action affecting the earnings of a principal defendant. These legislative efforts appear to have been futile, however, for on November 25, 1969, the Wisconsin Supreme Court ruled that the principles of procedural due process articulated in *Sniadach* required that § 267.02(1)(a) be held unconstitutional as applied not only to prejudgment wage garnishment, but also as to prejudgment garnishment of "other property" as well. *Larson v. Featherston,* 44 Wis.2d 712, 172 N.W.2d 20 (1969); rehearing denied, February 3, 1970. Subsequent to the *Larson* decision, the United States Supreme Court confirmed the principles of due process that the Wisconsin Supreme Court had established. *See: North Georgia Furnishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 681, 95 S.Ct. 719, 42 L. Ed.2d 1751 (1975).

Despite the fact that both the Wisconsin Supreme Court and the United States Supreme Court have, in effect, found § 267.02(1)(a) Wis.Stats. to have fatal constitutional deficiencies in excess of those to which the amendment of subsection (2) was directed, no further corrective action has been undertaken by the Wisconsin legislature. This particular provision of the Wisconsin Statutes has remained as amended, effective August 9, 1969, and was successfully invoked against this plaintiff by the defendants named above in a garnishment proceeding begun in July of 1974. Nothwithstanding what appears to have been repeated efforts by this plaintiff's counsel to have that garnishment dissolved, such a result was not accomplished until this Court entered an order to that effect on May 1, 1975. This action seeks compensation for losses allegedly sustained as a result of that garnishment proceeding.

## II.

■■ No party can or does dispute the fact that, as a matter of settled federal law, any case arising under the provisions of 42 U.S.C. § 1983 must demonstrate both a deprivation of a right, privilege or immunity secured by the Constitution or laws of the United States, and causation of such deprivation by a person or entity acting under color of state law within the meaning of the fourteenth amendment. *See, e. g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Bright v. Isenbarger,* 314 F.Supp. 1382, 1388 (N. D.Ind., 1970). The question raised by counsel for defendant Gansen is whether under the charges set out in this complaint, an attorney for a private individual may be found to be acting under color of state law by virtue of his institution of, prosecution of, and failure to withdraw a patently unconstitutional garnishment proceeding. The Court would answer this question in the affirmative.

■ As a general rule, it is apparent that state court litigants are not amenable to suit under the provisions of the Civil Rights Act. This is true because, as mere participants in the state forum, their activities cannot be said to be attributable to the state itself. *See, e. g., Firnhaber v. Sensenbrenner,* 385 F.Supp. 406 (E.D.Wis., 1974).

On the other hand, several courts have held that a private person who effects an unconstitutional prejudgment judicial remedy does perform state action within the meaning of 42 U.S.C. § 1983. *See, e. g., Klim v. Jones,* 315 F.Supp. 109 (N.D.Cal.1970), *citing Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). The rationale supporting this theory is as follows:

". . . [A] private citizen is acting under color of state law when his action is encouraged by state law and especially when it is possible only by virtue of state law. In the instant case defendants were able to obtain a prejudgment garnishment only because of state law, therefore, they were acting under color of state law."

*McMeans v. Schwartz,* 330 F.Supp. 1397, 1399 (S.D.Ala.1971).

The decision rendered in *Klim v. Jones* itself articulates the logic through which state action is imputed to the private individual:

"Not only does California Civil Code § 1861 outline the conditions applicable to the lien in question here, but it is *only* by virtue of Section 1861 that defendant Jones had the power to impose a lien on the plaintiff's belongings, and it is *only* by virtue of Section 1861 that defendant Jones could impose such lien without subjecting himself to the forms of civil liability excluded by Section 1861. This is not just action against a backdrop of an amorphous state policy, but is instead action encouraged, indeed only made possible, by explicit state authorization."

*Klim v. Jones, supra,* 315 F.Supp. at p. 114. [Emphasis in original.]

The theories set forth above have been adopted by at least one court within the Seventh Circuit. *See: Collins v. Viceroy Hotel Corporation,* 338 F.Supp. 390 (N.D.Ill.1972); *cf. Larkin v. Bruce,* 352 F.Supp. 1076 (E.D.Wis.1972) [State action attributed to a private party bringing suit pursuant to a particular state statutory scheme.] This Court finds them to be controlling here.

If the doctrine articulated in the foregoing cases is accepted as valid, it would appear to follow, *a fortiori,* that an attorney is engaging in state action within the meaning of § 1983 when he brings and presses a suit which attributes state action to his client: it is the attorney who actually causes the existing state procedures to be implemented; it is both he and the person he represents who stand to gain monetarily from the use of such state procedures, and seemingly should be liable for money damages if substantial constitutional rights are

thereby violated. *Cf: Tunheim v. Bowman,* 366 F.Supp. 1395 (D.Nev.1973).

 Despite the foregoing, it is clear that as a general proposition, attorneys are held to be immune from civil liability under 42 U.S.C. § 1983, even if their clients are not. *See, e. g., Jones v. Jones,* 410 F.2d 365 (7th Cir. 1969), *cert. denied,* 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970); *Kovacs v. Goodman,* 383 F.Supp. 507 (E.D.Pa.1974) [cases from six circuits cited at note 1.]; *Tunheim v. Bowman, supra.* The Court recognizes that this principle of immunity is grounded upon critical social considerations, for, if an attorney must work in constant fear of civil liability, it is the rights of the public that will suffer. Any such threat of liability visits an obvious chilling effect upon the attorney's enthusiasm to vigorously defend his client's position. *Tunheim v. Bowman, supra.* The remedies guaranteed by the Civil Rights Act are not to be invoked so as to create a conflict between the attorney's duties to protect himself and to zealously represent his client. *Ehn v. Price,* 372 F.Supp. 151 (N.D.Ill.1974). As a matter of public policy, the attorney must not be placed in a position where he is compelled to gamble on the outcome of a case, with his own personal liability hanging in the balance.

Having articulated the general theory whereby private individuals are thought to be engaged in state action when suits are brought in their behalf pursuant to particular state statutes, and having investigated the nature and purpose of the attorney's immunity in this regard there remains the task of applying these principles to the claims presented in this complaint. The Court would inquire whether the application of either or both of these theories, in the context of this case, would implement the goals they seek to achieve.

### III.

 Liberally construed, the complaint at issue here appears to charge that defendant Gansen acted willfully and wantonly in bringing, prosecuting and refusing to dismiss a patently unconstitutional garnishment action against this plaintiff in a Wisconsin county court. Said complaint, the briefs submitted both in support of and in opposition to the motion to dismiss the complaint, and the oral argument that has been heard, demonstrate that the garnishment action begun in July of 1974 was apparently foreclosed by decision of the Wisconsin Supreme Court entered in November of 1969 as well as by subsequent decision of the United States Supreme Court, entered in January of 1975. Despite the fact that such was brought to the attention of the attorney prosecuting the garnishment action on several occasions, it is clear that no remedial steps were undertaken to relieve this plaintiff of the burden of the garnishment procedure until such was compelled by order of this Court. In addition, these pleadings charge that Attorney Gansen was at all times relevant here to acting without specific direction from his client, the named garnishor, and that the whole of the garnishment action was under his complete control.

The Court finds that, if substantiated at trial by competent evidence, the allegation that this defendant willfully and maliciously commenced a frivolous garnishment action without substantial hope of success or other legitimate purpose constitutes a claim upon which relief may be granted under the provisions of 42 U.S.C.A. § 1983.

 As noted above, it is clear that the logic whereby the named plaintiff is thought to be engaged in state action by instituting a garnishment proceeding applies with equal force to that plaintiff's attorney. The Court finds that where malicious or bad faith use of garnishment procedures is proven, the immunity otherwise available to the attorney is not to be applied for the reason that it would not implement the goal it generally stands to achieve. The

threat of civil liability for such malicious or bad faith conduct in no way "chills" the duty of an attorney to zealously present or defend the claims of his client, for by definition, malicious use of garnishment procedures implies a distinct and ulterior purpose on the part of the attorney. Such an attorney in no way "gambles" on the outcome of a court's decision, for the result is clear to him from the outset.[1]

The Court would note that the analysis outlined above represents no major deviation from principles of law that have been established in the past. The United States Courts in the Southern District of New York have on several occasions articulated an exception to the immunity to be granted a state prosecutor when malicious conduct can be shown in a claim filed under the Civil Rights Act. *See, e. g., Palermo v. Rockefeller,* 323 F.Supp. 478, 485 (S.D.N.Y., 1971 and *Martin v. Merola,* 389 F.Supp. 323, 326 (S.D.N.Y., 1975). If the immunity to be accorded a prosecutor may fall in the face of a showing of malice, it would seem to follow *a fortiori* that the immunity of a private attorney is not to be allowed to withstand such a charge. In point of fact, it may well be that any intentional and malicious use of a state forum to effect a deprivation of constitutional rights serves to provide a cause of action for the injured party under the provisions of 42 U.S.C. § 1983. *See: Brown v. Dunne,* 409 F.2d 341, 344 (7th Cir., 1969), Kerner, J., concurring. This Court does not reach that question here, however.

## IV.

Because the theory by which state action is imputed to the plaintiff in a garnishment action is equally if not more applicable to his attorney, and because the purpose of the doctrine of immunity would not be implemented by application to an attorney in the context of a case where his bad faith or malice can be established, the Court cannot now hold that the complaint at issue here fails to state a claim under any state of facts which might be proved in support of allegations presented by this plaintiff.

The Court feels that a showing of bad faith or malice would preclude application of the doctrine of immunity, and

---

1. In addition to what has been said in the principal opinion, the Court would note that ethical standards imposed by both the American Bar Association and the Wisconsin State Bar Association also restrict the scope of conduct of the private attorney. While these standards may not have the force of law, they demonstrate that whatever "chilling" would result from imposition of liability in a case where malice or bad faith was established, such chilling would be of relatively minor consequence because it would concern conduct that is clearly proscribed by the standards these organizations have adopted and published:

"*Duty of the Lawyer to a Client*

"EC 7-4. The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous."

Code of Professional Responsibility, American Bar Association, as adopted in August 1969 and amended through February, 1975; Section 256 App. EC 4-2, Wis.Stats.

"DR 7-102. *Representing a Client Within the Bounds of the Law*

"(A) In his representation of a client, a lawyer shall not:

"(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

Code of Professional Responsibility American Bar Association, as adopted in August, 1969, and amended through February 1975; Section 256 App. DR 7-102, Wis.Stats.

thus render the conduct of defendant Gansen state action within the meaning of 42 U.S.C. § 1983. For this reason, the motion to dismiss the complaint, filed on behalf of defendant Gasen under Rule 12(b)(6), F.R.C.P., must be and is hereby denied.