Frederick J. VOYTKO and Janet G. Voytko, Plaintiffs,

and

Ronald R. Ryan and Barbara E. Ryan, Plaintiffs,

v.

RAMADA INN OF ATLANTIC CITY, Raymond Ginnetti, Edward I. Feinberg and Isaac C. Ginsburg, Individually and as partnership known and identified as Feinberg and Ginsburg, Jeffrey L. Gold, Ben Polk, Adolphus Young and Harold Tyner, Defendants.

Civ. A. Nos. 76–0142 and 76–0685.

United States District Court,
D. New Jersey.

Jan. 31, 1978.

Evans, Koelzer, Marriott & Osborne by George Koelzer, and Joel N. Kreizman, Rumson, N. J., for plaintiffs Voytko.

William J. Gearty, Spring Lake, N. J., for plaintiffs Ryan.

Horn, Weinstein, Kaplan & Goldberg by Howard A. Goldberg, Atlantic City, N. J., for defendants Ramada Inn, Ginnetti, Feinberg, Ginsburg, and Feinberg and Ginsburg, and Gold.

## OPINION ON MOTION TO DISMISS

GERRY, District Judge.

In these consolidated actions, plaintiffs Frederick Voytko and his wife Janet, and Ronald Ryan and his wife Barbara, allege that the defendants combined to maliciously prosecute Voytko and Ryan for failing to pay a hotel bill, depriving plaintiffs of civil rights under 42 U.S.C. §§ 1983 and 1985(3) (1970), and committing common law torts of malicious prosecution and malicious use of process, *inter alia*.

The defendants are the Ramada Inn of Atlantic City, New Jersey, and its manager Raymond Ginnetti who initiated the criminal complaints against Voytko and Ryan. Two partners and an associate of the law firm which allegedly represented the hotel and prosecuted Voytko and Ryan are also defendants.

This action is before the court on a motion by these defendants[1] for an order dismissing the consolidated complaints against all moving defendants for failure to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6), or in the

---

1. The remaining defendants are officers of the Atlantic City, N. J., Police Department who allegedly arrested and/or attempted to coerce plaintiffs to pay the disputed hotel bill. These police officers have not joined in this motion to dismiss.

alternative for summary judgment pursuant to F.R.Civ.P. 56.

For reasons which follow, the instant motion will be granted in part and denied in part.

### I.

In opposing this motion to dismiss under F.R.Civ.P. 12(b)(6) and alternatively for summary judgment under F.R.Civ.P. 56, all factual allegations in the complaints, affidavits, deposition testimony and answers to interrogatories by plaintiffs Voytko and Ryan alleging violations of their civil rights and pendent causes of action must be accepted as true, and all favorable inferences therefrom will sound to the benefit of these plaintiffs.[2]

Frederick Voytko and Ronald Ryan are architects who were employed by Huntington-Larson Architects. They visited the Ramada Inn in Atlantic City, where their firm maintained a hospitality suite for a convention in November, 1974. Huntington-Larson (hereinafter "H–L") had arranged for a party, and Voytko and Ryan were among the H–L employees who drove to Atlantic City to act as hosts at the party. The plaintiffs sought parking places, and they told Ramada's manager, defendant Ginnetti, that they were attending the H–L party and did not intend to stay overnight or to take a room. Mr. Ginnetti said they could park at the hotel if they signed guest cards, which they then signed, giving H–L's name and office address. They remained at the party until mid-evening when they departed for home.

H–L apparently failed to pay its bill for the hospitality suite, food and liquor. For purposes of this motion, there is no dispute that H–L owed the hotel $907.02 and that Voytko and Ryan were assumedly not liable to the hotel in any way for the H–L bill.[3]

Ramada turned the unpaid bill over to its attorneys, the defendant firm of Feinberg and Ginsburg, for collection. In mid-February, 1975, H–L acknowledged its debt in a letter to the law firm. Nonetheless, on February 27, 1975, defendant Edward Feinberg addressed a letter to the plaintiffs threatening them personally with criminal prosecution if payment were not made promptly.

Plaintiff Voytko wrote back, offering to pay for one night's lodging if he had incurred such liability by signing the register.

A second Feinberg letter to the plaintiffs threatened criminal prosecution, and on April 19, 1975, defendant Ginnetti filed criminal complaints against Ryan and Voytko alleging the commission of a misdemeanor pursuant to a defrauding of innkeepers statute, N.J.S.A. 2A:111–19 (1969),[4] alleging that Voytko and Ryan "did willfully accept food and lodging . . . and did leave said motel without paying said amount." Warrants were issued for the arrest of Voytko and Ryan. The plaintiffs assert that this charge was knowingly false.

Mr. Voytko, who knew nothing of the arrest warrant, was arrested at his home in Long Branch, New Jersey, in the evening by officers of the local police department. He was kept in custody for three hours in a

**2.** *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**3.** (Deleted)

**4.** N.J.S.A. 2A:111–19 (1969) provides:
 Any person who obtains credit or accommodation at any hotel, inn, boarding house or lodging house, by means of any false pretense, or who, with intent to defraud the proprietor thereof, or his agent or servant, obtains any credit or accommodation at such place without paying therefor, is guilty of a misdemeanor.

Proof that lodging, food or other accommodation was obtained by false or fictitious showing, or pretense of baggage, or that the person refused or neglected to pay for such food, lodging or other accommodation upon demand, or removed or caused to be removed his baggage without paying for such food, lodging or other accommodation, is presumptive evidence of fraudulent intent, but this section shall not apply where there has been a special agreement for delay in payment. A person charged with this crime faces a potential maximum sentence of $1000 and three (3) years' imprisonment. N.J.S.A. 2A:111–49(a) (Supp.1977).

Long Branch cell, from which he was then transported in the custody of Atlantic City police officers about 80 miles to Atlantic City, where he was processed, fingerprinted and after several hours admitted to $2500.00 bail and released at 1:30 A.M.

Plaintiff Ryan, unlike Voytko, was not arrested at home. Ryan was told about Voytko's arrest, and he found out that his hometown police had a warrant for his arrest and that they had called his office to find him. He drove to Atlantic City from his home in Spring Lake Heights. He reported to the clerk of the municipal court, who called the police officers in the same building. Ryan was taken to their office where he was fingerprinted and admitted to bail and released. These events, including Ryan's journey to and from Atlantic City, consumed six hours.

The Voytko and Ryan matters were taken before the Atlantic County grand jury, which refused to indict finding no probable cause that these plaintiffs had violated N.J. S.A. 2A:111–19.

Despite dismissal of the indictment, the defendant hotel and its manager, together with the hotel's attorneys, filed new charges against Voytko and Ryan, alleging a violation of the Disorderly Persons Act for intent to defraud a hotel keeper under N.J.S.A. 2A:170–47 (1971).[5]

The plaintiffs were brought to trial on the disorderly charge. Defendant Gold, an associate of the law firm retained by Ramada Inn, actually prosecuted the case for the state, pursuant to N.J. Rules of Practice 7:4–4(b)[6] which allows appointment of a private attorney to act as prosecutor in certain criminal cases.

At the close of the prosecution's case, the pending charges were dismissed for failure of proof.

This case presents several issues under the Civil Rights Act of 1871, including whether the defendants' conduct was under color of state law within 42 U.S.C. § 1983, whether the plaintiffs have been deprived of rights cognizable under the federal civil rights statutes, and whether prosecutorial immunity shields the conduct of privately retained attorneys under the circumstances of this case.

II.

A cause of action exists under 42 U.S.C. § 1983 (1970)[7] against any person who acts under color of state law to deprive a citizen of any right, privilege or immunity secured by the Constitution and laws. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The moving defendants claim first that as private parties they have not

---

**5.** N.J.S.A. 2A:170–47 (1971) provides:

Any person who obtains food, lodging or other accommodation or service at a hotel, inn, boarding house, restaurant or hospital, with intent to defraud the owner or keeper thereof, is a disorderly person.

Proof that lodging, food or other accommodation or service was obtained by false pretense, or by false or fictitious show or pretense of any baggage or other property, or that in the absence of a special agreement for deferred payment the person refused or neglected to pay on demand or absconded without paying or offering to pay for such food, lodging or other accommodation or service, or that he gave in payment therefor negotiable paper on which payment was refused, or that he surreptitiously removed or attempted to remove his baggage, is prima facie proof of intent to defraud.

**6.** N.J. Rules of Practice 7:4–4(b) provides:

Appearance of Prosecution. Whenever in his judgment the interests of justice so require, or upon the request of the court, the Attorney General, county prosecutor, municipal court prosecutor, or municipal attorney, as the case may be, may appear in any court on behalf of the state, or of the municipality, and conduct the prosecution of any action, but if the Attorney General, county or municipal court prosecutor or municipal attorney does not appear, any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the state or the municipality.

**7.** 42 U.S.C. § 1983 (1970) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

acted under color of state law, and second that malicious prosecution is not cognizable as a deprivation of a right of constitutional dimension.

## A.

There is no bright line by which the conduct of private parties becomes state action for purposes of the Fourteenth Amendment and civil rights statutes.

The Third Circuit, in *Magill v. Avonworth Baseball Conference*, 516 F.2d 1328 (3d Cir. 1975), has identified three categories of state action cases:

> (1) [W]here state courts enforced an agreement affecting private parties; (2) where the state "significantly" involved itself with the private party; and (3) where there was private performance of a government function.

*Id.* at 1330–31. The requirement of 42 U.S.C. § 1983 that the actions be "under color of state law" is regarded as the functional equivalent of the state action requirement of the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794–95 & n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Parks v. "Mr. Ford,"* 556 F.2d 132, 135 & n. 5 (3d Cir. 1977).

The narrow question now considered is whether the action by a hotel and its agents in filing and prosecuting a criminal complaint under a defrauding of innkeepers statute, where the hotel's retained attorney acts as prosecutor, amounts to "state action." We hold that it does.

It is clear that the allegations indicate that there was private performance of a government function under statutory authority vested in the hotel, its employees and agents.

In *Parks v. "Mr. Ford," supra*, the Third Circuit (en banc) applied the *Magill* test to private conduct by garagemen retaining and selling vehicles of creditors. The court's plurality opinion held that the mere *retention* of debtors' vehicles pursuant to a common law garagemen's lien did not constitute "state action" for several reasons. Such retention was not a power "traditionally associated with sovereignty" because the state does not assist in the conduct, the property is already in the garageman's possession, and the common law lien has ancient origins which have traditionally recognized self-help retention as a private right. 556 F.2d at 138–139.

State action was held to be implicated, however, in the garageman's *sale* of a retained vehicle pursuant to a statute allowing the garageman to proceed with the sale after notice and "in the same manner as personal property is sold by a sheriff or constable [Pa.Stat.Ann. tit. 6, § 12 (1963)]." 556 F.2d at 140–141. The state was held to have delegated to garagemen powers traditionally reserved to the sheriff by authorizing such sales, directing the use of the same procedures employed by the sheriff, and giving such sales the effect of judicial sales. *Id.* The state had placed a power amounting to ex parte judicial sale into the arsenal of the garageman who seeks to collect an unpaid private debt.

In the context of debts owed to innkeepers, the retention of property of a guest who fails to pay is an innkeeper's right enjoyed at common law and such retention will not ordinarily be "state action" because the inn's power does not partake of a traditional function of sovereignty.[8]

An innkeeper's sale of the guest's property, however, if tantamount to a judicial sale, would undoubtedly be considered as state action under the *Parks v. "Mr. Ford"* analysis.

Beyond such civil remedies the state of New Jersey, through N.J.S.A. 2A:111–19 & 170–47 (1971), has provided hotel owners with access to the criminal law in actions arising from a private debt. The power to invoke the aid of state criminal prosecution

---

**8.** *Davis v. Richmond*, 512 F.2d 201, 204–05 (1st Cir. 1975); *Anastasia v. Cosmopolitan National Bank of Chicago*, 527 F.2d 150, 154–58 (7th Cir. 1975). *Contra, Culbertson v. Leland*, 528 F.2d 426, 428–31 (9th Cir. 1976); *Johnson v. Riverside Hotel, Inc.*, 399 F.Supp. 1138, 1140 (S.D. Fla.1975); *Klim v. Jones*, 315 F.Supp. 109, 114 (N.D.Cal.1970).

under statutes specifically limited to persons who fail to pay their hotel bill is a sanction against debtors extending far beyond the common law innkeeper's lien. By instituting a criminal prosecution the innkeeper can enlist state process to seize the *person* prior to a due process hearing on whether a debt is even owed. It would not be surprising if the threat of criminal prosecution were often effectively used as a potent debt collection weapon, as is alleged to have occurred in this case. An obvious purpose for the defrauding of innkeepers statutes is to deter the nonpayment of hotel debts by threat of criminal penalties. The state has thus shown a special interest in protecting the innkeeper by conferring a deterrent to nonpayment (and, indeed, a potent mechanism to induce payment) which is not available to merchants generally; the state has allied itself with the hotel's interests to this unusual degree.[9]

In sum, the innkeeper exercises a prosecutorial privilege at criminal law which derives from the sovereign. The criminal statutory scheme inherently deters nonpayment and its threatened use in a specific case may induce payment; this places the hotel into a functional position toward debtors not unlike the tax collector who has criminal remedies at his disposal to induce payment. The innkeeper's power to act as if it were the state is even further enhanced by the state custom allowing the hotel's own retained attorney to act as criminal prosecutor on behalf of the state under N.J.Rules of Practice 7:4–4(b), *supra.*

■ In this particular case, the combination of the hotel's available statutory remedy of initiating criminal process and arrest for nonpayment of a hotel bill with the custom of permitting a private hotel's attorney to act as state prosecutor, constitutes a delegation of sovereign power and gives rise to state action for purposes of 42 U.S.C. § 1983. The type of privilege here conferred bespeaks a series of activities—

initiation of criminal action, leading to arrest of a person and trial by private prosecutor—which are "ordinarily associated with the state, thus requiring that its exercise be subjected to constitutional limitations," *Parks v. "Mr. Ford," supra,* 556 F.2d at 143, 145 (Adams, J., concurring).

### B.

The question of whether the character of the malicious prosecution alleged herein constitutes deprivation of rights under the Constitution and laws requires reference to the common law tort of malicious prosecution.

■ The tort of malicious prosecution has four elements under the law of New Jersey: (1) a criminal proceeding must have been instituted or continued by the defendant against the plaintiff; (2) terminated in favor of the accused; (3) with absence of probable cause for the charge; and (4) with malice (which may be inferred from lack of probable cause) or primary purpose other than bringing the offender to justice. *Lind v. Schmid,* 67 N.J. 255, 262, 337 A.2d 365, 368 (1975); *Earl v. Winne,* 14 N.J. 119, 134–135, 101 A.2d 535, 539–540 (1953); *Prosser on Torts* § 119 (4th ed. 1971). The plaintiffs have alleged facts which, if proven, support a cause of action at common law for malicious prosecution against the hotel, its manager and attorneys. The issue is to identify the point at which such conduct also becomes cognizable as a violation of federal civil rights.

■ The existence of a state tort remedy does not foreclose a supplementary federal civil rights remedy if a federal right is also invaded. *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Of course, certain simple torts, even if committed by a state officer and arguably implicating some liberty or property impairment, do not also constitute invasion of a federal

---

**9.** This special privilege accorded to innkeepers under New Jersey law distinguishes the circumstances herein from *Dennis v. Hein,* 413 F.Supp. 1137 (D.S.C.1976), wherein no state action was found in initiating criminal process under a *general* commercial debtors criminal fraud statute.

right.[10] Constitutional concerns arise when state action deprives a person of a status to which he is otherwise entitled at law; a liberty interest deriving its substance from state law may not be invaded absent the protections of due process.

Whether a person has a civil right to be free from malicious prosecution is a matter which has divided the courts. Many decisions indicate that generally the elements of malicious prosecution under color of state law may form the basis of a § 1983 claim.[11]

The recent decision in *Jennings v. Shuman*, 567 F.2d 1213, No. 76–2517 (3d Cir., November 30, 1977), settles the issue in the Third Circuit. The court found that a complaint alleging wrongful initiation of criminal process without probable cause, thereby affecting an arrest, with prosecutorial extortionate demands made subsequent to arrest, stated causes of action in tort for both malicious use of process (malicious prosecution) and malicious abuse of process under Pennsylvania law. The cause of action for malicious prosecution was barred by the statute of limitations, but a different limitations period governed the abuse of process charge at state law. The court found that the district court erred in dismissing the complaint, because the abuse of process claim constituted a cause of action under section 1983 since a constitutionally protected liberty interest was invaded. The opinion's rationale clearly indicates that the same result applies in the case of malicious prosecution and that even minimal detention will support this cause of action under section 1983:

The defendants argue that, although malicious use of process [malicious prosecution] is a constitutional tort in that plaintiff is unjustifiably deprived of liberty when falsely arrested, malicious abuse of process does not deprive the plaintiff of constitutional rights. We disagree.

An abuse of process is by definition a denial of procedural due process. A deprivation of liberty or a determination of guilt or innocence may not be made on the basis of willingness to accede to extortionate demands. The plaintiff alleges a conspiracy which for purposes of the statute of limitations is analogous to the tort of abuse of process. The goal of that conspiracy was extortion, to be accomplished by bringing a prosecution against him without probable cause and for an improper purpose. The injuries allegedly caused by defendants' actions include the deprivation of liberty concomitant to arrest and to the pendency of a criminal process, whether the plaintiff was in jail, released on bail, or released on his recognizance. Such deprivations without due process state an injury actionable under section 1983. *See, e. g., Economou v. United States Department of Agriculture*, 535 F.2d 688 (2d Cir. 1976), *cert. granted sub nom. Butz v. Economou*, 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977).

10. For example, in *Estelle v. Gamble*, 429 U.S. 97, 105–106, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Court held that medical malpractice by prison authorities does not invade a federal right, because a more grievous or purposeful course of conduct—"deliberate indifference to serious medical needs"—is required. Similarly, in *Paul v. Davis*, 424 U.S. 693, 697–699, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), a complaint stating an actionable common law claim for defamation by a police chief was held to be insufficient to set forth a § 1983 claim; the defamatory police listing of plaintiff as an "active shoplifter" did not deprive him of a due process liberty interest.

11. *Pritchard v. Perry*, 508 F.2d 423 (4th Cir. 1975); *Nesmith v. Alford*, 318 F.2d 110 (5th Cir. 1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964); *Whirl v. Kern*, 407 F.2d 781, 787–788 (5th Cir. 1969) [dictum]; *Muller v. Wachtel*, 345 F.Supp. 160 (S.D.N.Y. 1972); *Atkins v. Lanning*, 415 F.Supp. 186 (N.D.Okl.1976). Other decisions indicate that malicious prosecution, without more, is insufficient to constitute a § 1983 cause of action. *Paskaly v. Seale*, 506 F.2d 1209, 1212 (9th Cir. 1974) [dictum]; *Wells v. Ward*, 470 F.2d 1185, 1187 (10th Cir. 1972); *Pyles v. Keane*, 418 F.Supp. 269 (S.D.N.Y.1976); *Anthony v. White*, 376 F.Supp. 567 (D.Del.1974); *Weyandt v. Mason's Stores, Inc.*, 279 F.Supp. 283 (W.D.Pa. 1968) [dictum].

*Jennings v. Shuman, supra,* at 1220 [footnote omitted].[12]

■ When the initiation of a malicious prosecution entails arrest and detention (such as Voytko alleges) or arrest and release on posting of money bail (as Ryan alleges), the complaints state an invasion of a substantial liberty interest implicating the undoubted right to be free from state seizure and confinement without probable cause. Accordingly, both complaints state a cause of action for malicious prosecution cognizable under section 1983. *Jennings v. Shuman, supra; see Basista v. Weir,* 340 F.2d 74, 80–81 (3d Cir. 1965); *Jenkins v. Averett,* 424 F.2d 1228, 1231 (4th Cir. 1970); *Pritchard v. Perry,* 508 F.2d 423 (4th Cir. 1975). The motion to dismiss Counts 5 and 6 will be denied.

### III.

The complaints also assert claims under 42 U.S.C. § 1985(2) & (3), as well as pendent state law claims for malicious prosecution and malicious use of process, and the complaints reallege each claim on behalf of the wives deriving from their husbands' alleged constitutional and tortious injuries. Each of these issues will be briefly discussed.

### A.

■ Counts 1 through 4 of each complaint allege that the defendants conspired to deprive plaintiffs of equal protection of the laws in violation of 42 U.S.C. § 1985(2) & (3). The Supreme Court held that section 1985 may only reach conspiracies which are invidiously discriminatory in their motive and effect, *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The plaintiffs have failed to allege invidious racial or class-based discrimination, and their complaints accordingly fail to allege a cause of action under section 1985.[13] The motion to dismiss Counts 1 through 4 will be granted.

### B.

We next consider the pendent state tort claims. Counts 9 and 10 of the complaints recite the necessary elements for the malicious prosecution cause of action, as enumerated in part II.B, *supra.*

■ Counts 13 and 14 are denominated "malicious use of process." This is, however, merely another name for malicious prosecution, requiring the same proof. *See Earl v. Winne,* 14 N.J. 119, 134–135, 101 A.2d 535, 539–540 (1953); *Prosser on Torts* § 119 (4th ed. 1971); *see also Jennings v. Shuman, supra,* at 1216–1219 (malicious prosecution same as malicious use of process but distinct from malicious *abuse* of process at common law in Pennsylvania). These counts additionally assert that the defendants "made an improper, illegal and perverted use of the criminal process of the State of New Jersey and in the use of such process there existed an ulterior motive," *i. e.,* the collection of a private debt. The proper name for this tort is "malicious *abuse* of process," which (unlike malicious use of process) is not concerned with absence of probable cause or with lack of

---

**12.** The existence of a federal cause of action for malicious prosecution was indirectly involved in *U. S. ex rel. Rauch v. Deutsch,* 456 F.2d 1301 (3d Cir. 1972), wherein the plaintiff had been prosecuted by defendants who were a police officer and district attorney, allegedly as part of a scheme to extort money from the plaintiff. The plaintiff had apparently been convicted, so a necessary element of the tort was absent. The court found immunity for the acts of the defendants without discussing whether a federal right had actually been violated.

**13.** The Third Circuit has not interpreted § 1985 to embrace conspiracies which are not motivated by racial or class-based reasons. *See, e. g., Jennings v. Shuman,* 567 F.2d 1213, at 1220–1221 (3d Cir., Nov. 30, 1977); *Waits v. McGowan,* 516 F.2d 203 (3d Cir. 1975); *Robinson v. McCorkle,* 462 F.2d 111 (3d Cir.), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972). Dictum in *Phillips v. Trello,* 502 F.2d 1000 (3d Cir. 1974) is not to the contrary since that case was remanded on a § 1983 issue, the court not reaching the § 1985(3) question. Nor are we presented here with a case where the plaintiffs may be left without remedy for an invidious but non-racial, non-classbased discrimination, to which some other courts have extended the § 1985(3) remedy. *See* Note, *The Scope of Section 1985(3) Since Griffin v. Breckenridge,* 45 *Geo.Wash.L.Rev.* 239 (1977).

success of the prosecution. The elements of malicious abuse of process are just two: (1) the defendant has set legal process in motion for an improper ulterior purpose, and (2) the defendant has committed a willful act in the use of process which perverts the regular conduct of the proceeding to accomplish the improper purpose. *ADM Corp. v. Speedmaster Packaging Corp.*, 384 F.Supp. 1325, 1349 (D.N.J.1974), *remanded on other grounds*, 525 F.2d 662 (3d Cir. 1975); *Prosser on Torts* § 121 (4th ed. 1971).[14]

It is apparent that Counts 13 and 14 state a cause of action for malicious abuse of process, a tort distinct from malicious prosecution as noted above. It would be improper to dismiss a claim which raises a cognizable cause of action where that claim is merely mislabeled, in view of the command of F.R.Civ.P. 8(f) that "[a]ll pleadings shall be so construed as to do substantial justice." *See Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); 5 *Wright & Miller, Federal Practice & Procedure* § 1286 (1969).

We also find that these causes of action for malicious prosecution and malicious abuse of process are pendent state law claims which derive from the same "common nucleus of operative fact" as the substantial federal claim under section 1983 which arise among these same parties; the court finds that this is a suitable case for the discretionary exercise of pendent jurisdiction over the tort claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The motion to dismiss Counts 9, 10, 13 and 14 will be denied.

## C.

The wives of Voytko and Ryan assert their own claims of injury as a result of the various alleged deprivations suffered by their plaintiff-husbands. The wives do not claim that any action was taken against them individually by the defendants beyond the harm which was allegedly visited upon their husbands, and no particularized loss is claimed by the wives.

The wives' claims in Counts 3 and 4 (liability under section 1985(3)) have already been dismissed, *supra*. We consider the wives' purported claims under section 1983, and for malicious prosecution and abuse of process.

To state a claim under section 1983, each wife must assert that the defendants have acted under color of state law to deprive her of a personal constitutional right, and not merely a right accruing to her husband, where she does not act as a legal representative for her husband before the court. As the Third Circuit wrote in *O'Malley v. Brierley*, 477 F.2d 785, 789 (1973):

---

14. These distinctions between malicious prosecution and abuse of process are also recognized in *Restatement (Second) of Torts* §§ 653, 682 (1976):

§ 653. Elements of a Cause of Action [for Malicious Prosecution]
A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
(a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
(b) the proceedings have terminated in favor of the accused.

§ 682. General principle [Abuse of Process]
One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.
Comment:
a. The gravamen of [abuse of process liability] is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section.

Guiding our inquiry, then, will be the general rule that "a litigant may only assert his own constitutional rights or immunities," *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960); *McGowan v. Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and the principle that "one cannot sue for the deprivation of another's civil rights." C. Antieau, Federal Civil Rights Acts, Civil Practice, § 31 at 50–51 [footnote omitted].

Reading the pleadings with greatest latitude, we can discover no conduct which is alleged to deprive Mrs. Voytko and Mrs. Ryan of a personal federal civil right. The complaints allege no invasion of a protected liberty or property interest of the wives.[15] Any inconvenience or embarrassment which the wives may have suffered is de minimis and clearly subordinate to the invasions of the husbands' rights to be free from unwarranted seizure by the police, which forms the basis for the complaints. Accordingly, the wives' claims under section 1983 in Counts 7 and 8 will be dismissed.

 There remains no federal claim asserted by plaintiffs Mrs. Voytko and Mrs. Ryan; hence their state law claims for malicious prosecution and abuse of process cannot stand where complete diversity of citizenship would be defeated by recognizing the wives' state law claims.[16] Nor does the court conceive this to be an appropriate case to allow pendent state law issues to be joined by persons not a party to the underlying federal question litigation, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). It is not sufficient that the wives' claims at state law arguably derive from the common nucleus of operative fact giving rise to the dispute between the parties to the federal claim, because the wives' claims would entail "the addition of a completely new party" asserting a claim over which this court does not have jurisdiction. *Aldinger v. Howard, supra,* 427 U.S. at 9, 15, 96 S.Ct. at 2420. Whether the state law claim would add a non-diverse defendant (as in *Aldinger*) or a non-diverse plaintiff (as in the instant case) is immaterial; the objectionable practice is the assertion of a *claim* at state law over which the federal court lacks jurisdiction absent diversity of citizenship where that claim would decide the rights of a person who is not a party (and who cannot be made a party) to the underlying federal question.

For these reasons the claims of Mrs. Voytko and Mrs. Ryan in Counts 7, 8, 11, 12, 15 and 16 will be dismissed.

## IV.

Defendants Edward Feinberg, Isaac Ginsburg, Jeffrey Gold, and the law firm of Feinberg and Ginsburg, all seek dismissal of the complaint on grounds of prosecutorial immunity and private attorney immunity from the section 1983 claim.

The plaintiffs urge that the attorneys conspired with their client Ramada Inn and its manager Ginnetti to file a criminal complaint charging an indictable offense knowing that these plaintiffs did not owe the debt and that the plaintiffs' employer had in fact acknowledged the debt in a letter to the law firm two months previously. The plaintiffs argue that there could be no prosecutorial immunity for these attorneys for initiating the complaint on the indictable offense because it was not until the indictable offense was dismissed and the lesser disorderly persons charge was initiated by defendants in municipal court that Ramada's attorney could obtain leave to prosecute the case in place of the public prosecutor under N.J.Rules of Practice 7:4–4(b).[17] Under the plaintiffs' theory, an attorney

---

15. Mrs. Voytko's and Mrs. Ryan's claims repeat and incorporate those of the plaintiff-husbands, and allege, as in ¶ 33 of each complaint: "As the result of the foregoing, plaintiff [Janet G. Voytko or Barbara E. Ryan] was damaged." The complaints repeat ¶ 33 in Counts 7 and 8, with respect to the § 1983 claim. There is no particularized claim of damage to the wives.

16. All parties being residents of New Jersey, this court lacks diversity jurisdiction, 28 U.S.C. § 1332.

17. See note 6 *supra*.

whose client maliciously institutes a misdemeanor charge against a third party for collection of a debt, where the attorney and client both know that the debt is owed by another entity, would be equally liable with his client for malicious prosecution and would not be entitled to immunity from section 1983 liability as a prosecutor.

## A.

In determining the scope of immunity of the private attorneys, this court is guided by the Supreme Court's decision in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), where the state prosecutor was alleged to have presented false testimony in obtaining a murder conviction of the plaintiff. The prosecutor was held to be immune from a civil suit for damages under section 1983 "in initiating a prosecution and presenting the State's case." *Id.* at 431, 96 S.Ct. at 995. Stating that the scope of section 1983 immunity must be "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it," *id.* at 421, 96 S.Ct. at 990, the Court analyzed the purposes of prosecutorial immunity at common law:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Id.* at 422–423, 96 S.Ct. at 991.

The Court reasoned that the public prosecutor should be immune from section 1983 liability for his conduct in initiating and presenting a criminal case because otherwise the prosecutor's performance could be undermined, his decisions constrained and his energy "diverted from the pressing duty of enforcing the criminal law." *Id.* at 424–425, 96 S.Ct. at 992. Moreover, a prosecutor who may be responsible for hundreds of indictments and trials should not be exposed to the virtual relitigation of criminal cases years later when sued in the civil forum by former defendants. *Id.* at 425–426, 96 S.Ct. 984.

In the instant actions, we have no doubt that the defendant-attorneys would be immune from section 1983 liability if they acted as public prosecutors, because the complaints charge malicious conduct in initiating the prosecution and presenting the criminal cases, *Imbler v. Pachtman, supra.* Whether public policy suggests that these private attorneys are protected by the same scope of absolute prosecutorial immunity requires further reference to the function of private attorneys in the prosecution of criminal cases.

We note that private attorneys are not confronted with the massive threat of liability to which a public prosecutor is daily exposed. No "pressing duty" to enforce the criminal law resides in the private attorney; resort to a criminal complaint is an extraordinary measure taken when the client's private interest coincides with the public interest in combatting criminal activity.

The threat of civil liability might dissuade the private attorney from resort to the initiation of criminal prosecution to vindicate his client's interests. If so, the effect would be two-fold: (a) the attorney would be deflected from prosecuting crime, to the detriment of the general public; (b) the attorney's judgment in zealously representing his private client would be constrained toward non-criminal remedies, to the client's detriment. If the private attorney is to be absolutely immunized for his role in a malicious prosecution which invades a citizen's constitutional liberty interest, *Imbler v. Pachtman* suggests that absolute immunity can be justified only on grounds of the avoidance of a detriment to the general public which is greater than the harm caused to the wronged citizen who is left without relief.

The extent to which deterrence of the attorney's resort to criminal process might impede his private client's interests can not

**328**

be relied upon to foreclose section 1983 liability. If a private attorney felt deterred from filing a criminal complaint, his private client would still enjoy civil remedies; but if a private attorney were absolutely immunized from liability for malicious prosecution, the wronged criminal defendant would be left without remedy against the attorney.

**B.**

With these principles in mind we consider first the absolute immunity asserted by defendant Gold, whose only alleged connection with this case occurred after the indictable offense had been dismissed, when he was granted leave to prosecute the disorderly persons offense under N.J.Rules of Practice 7:4–4(b), *supra*.

Our research discloses very few cases dealing with the immunity of a prosecutor who is appointed to prosecute a particular case on behalf of the state. Perhaps the fundamental case in this regard is *Yaselli v. Goff*, 12 F.2d 396 (2d Cir. 1926), *aff'd per curiam*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927),[18] in which the Second Circuit held that an attorney who is specially appointed to prosecute an action on behalf of the U. S. Attorney General will be immune

from civil liability for both obtaining the appointment and conducting the prosecution.[19]

Prosecutorial immunity will not extend to conduct which goes beyond the scope of a prosecutor's functions, *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir. 1977), and likewise there can be no absolute immunity for conduct beyond the scope of a prosecutorial appointment. It seems clear that an appointed prosecutor acting within the scope of his appointment to initiate and present a criminal case performs an important quasi-judicial function of undeniable public benefit justifying the protection of absolute immunity even if he is motivated by a malicious intention. *See Jennings v. Shuman*, 567 F.2d 1213, at 1221–1222, No. 76–2517 (3d Cir., Nov. 30, 1977).[20]

Defendant Gold enjoyed a scope of prosecutorial power defined by Rule 7:4–4(b), which provides in part that if the public prosecutor (state, county, or municipal) does not appear in court and is not requested to do so by the magistrate, then "any attorney may appear on behalf of any complaining witness and prosecute the action for and on behalf of the State or the municipality."[21] We find that the com-

---

**18.** *Yaselli v. Goff, supra*, was discussed with approval in *Imbler v. Pachtman, supra*, 424 U.S. at 422, 96 S.Ct. 984.

**19.** In *Yaselli v. Goff, supra*, the Second Circuit found that the appointed prosecutor must be immune from civil liability for this conduct, stating:

In our opinion, the reasons which compel us to hold that one who obtains an appointment as a prosecuting officer of the government is immune from civil liability for acts done by him in the discharge of his official duties apply in like manner to protect him against such a charge as that he was governed by improper motives in securing the appointment. The important fact is that he was appointed to the office, and, having been appointed, the public interests require that he shall be free and fearless to act in the discharge of his official duties. If he cannot be charged with acting willfully and maliciously after he gets appointed to the office, no more can he be charged with having conspired to get into the office in order to act willfully and maliciously after he gets his appointment. 12 F.2d at 407.

**20.** In *Jennings v. Shuman, supra*, the Third Circuit remanded for consideration whether the special prosecutor who was appointed to investigate a murder, where his authority was limited by statute to "preparation and trial of any indictment for homicide or murder on behalf of the Commonwealth," acted beyond the authority of his appointment in allegedly maliciously abusing process by bringing a *burglary* prosecution knowingly based on false statements in order to extort money from the defendant. The appointee is entitled to absolute immunity only "while performing his official duties" as a court officer, *id.*, at 1222, *quoting United States ex rel. Rauch v. Deutsch*, 456 F.2d 1301, 1302 (3d Cir. 1972).

**21.** Research discloses no case interpreting this part of N.J.R.Proc. 7:4–4(b) or its predecessor R.R. 8:5. This court notes that it is common for disorderly persons offenses to be tried before the magistrate by private counsel on behalf of the complaining witness because many localities lack prosecutorial resources; the prosecution of such offenses by appointed counsel fills a public need and advances the

plaint alleges no misconduct by Gold falling outside the scope of his appointment under this rule, and accordingly defendant Gold shall be absolutely immune from civil liability under section 1983 and pendent tort claims.

The motion to dismiss the complaint will be granted as to defendant Gold.

### C.

Defendants Feinberg and Ginsburg and their law partnership are alleged to have acted as attorney for the defendant hotel, advising and instructing the manager to file the criminal complaint. The complaint under N.J.S.A. 2A:111–19 was then sworn by the defendant manager causing arrest warrants to issue. The attorneys are alleged to have had personal knowledge that Voytko and Ryan didn't owe the debt and that the architectural firm had acknowledged the debt in correspondence to the attorneys.

 It has often been held, in contexts different from the instant case, that a private attorney acting in his professional capacity does not act under color of state law for purposes of 42 U.S.C. § 1983. Private defense counsel in a criminal case do not act under color of state law whether retained, *Steward v. Meeker*, 459 F.2d 669, 670 (3d Cir. 1972), or appointed to represent an indigent defendant, *Thomas v. Howard*, 455 F.2d 228, 229 (3d Cir. 1972). Similarly, attorneys who represent private clients in civil actions where the state has no interest, where no state statute authorizes the attorney's conduct which is later complained of, do not act under color of state law. *Kovacs v. Goodman*, 383 F.Supp. 507, 509 (E.D.Pa. 1974), *aff'd*, 515 F.2d 507 (3d Cir. 1975).

 This court has found, however, that attorneys who choose to employ criminal process by initiating prosecution under the defrauding of innkeepers statute, where trial by private prosecutor is also available,

are engaged in "state action" for purposes of section 1983, *see* part II.A, *supra*. The private attorney's decision to employ criminal process extends his function beyond that of an advocate in a debt collection dispute between private parties; when the criminal arrest warrant issues some degree of detention of the private adversary will usually follow, regardless of the merits of the case.

 It is true that lawyers who are not also parties in interest and are engaged in private litigation on behalf of clients will not necessarily be subject to section 1983 liability even where their client's adversary is committed to jail as a collateral result of the civil proceedings, *see Jones v. Jones*, 410 F.2d 365, 366 (7th Cir. 1969), *cert. denied*, 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970). The attorneys in *Jones* had obtained an order requiring their client's ex-husband to make child support payments. The ex-husband refused to comply with the court order. His subsequent detention for civil contempt was caused by violation of a civil court order entered after a judicial hearing, and *not* by the unreviewed decision of a private attorney to initiate criminal proceedings. That rationale for private attorney immunity is confined to conduct of civil proceedings where the decision of a judicial officer is interposed prior to any deprivation of an opponent's liberty interest. Thus *Jones* is inapposite to the instant case.

Where attorneys engage in the criminal process, research discloses only one group which shares absolute immunity from civil liability equal to that of a public prosecutor, namely, the state-employed public defender. *Brown v. Joseph*, 463 F.2d 1046 (3d Cir. 1972), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973). This extension of immunity was mandated by considerations of public policy protecting the exercise of professional discretion by attor-

criminal process. Accordingly, counsel acting within the scope of such *ad hoc* appointment should be immune from civil liability in initiating a prosecution and presenting the state's case. *Imbler v. Pachtman, supra; Yaselli v. Goff, supra.*

neys serving in public offices in the criminal justice system.[22]

We do not conceive that the public interest compels absolute immunity for the private attorney as an encouragement of the private attorney's free exercise of professional judgment in directing his client to file a criminal complaint in a debt-collection dispute. While the court recognizes the public's interest in prosecuting hotel misdemeanants and disorderly persons, we are not persuaded that a private attorney's allegedly malicious exercise of discretion counseling prosecution resulting in criminal detention arising from an essentially private debt should be immunized from liability.

We think the relevant considerations regarding private attorney immunity from an otherwise valid section 1983 claim are most concisely set forth in *United States General, Inc. v. Schroeder*, 400 F.Supp. 713 (E.D.Wis. 1975), cited by both parties herein. In that case the complaint under section 1983 alleged that an attorney maliciously commenced a garnishment action without hope of success, without specific direction from his client, under a statute which had previously been declared unconstitutional by the Supreme Court. After reviewing traditional grounds for attorney immunity for conduct during the course of advocacy of a client's civil case,[23] the court nonetheless concluded that none of these public policy reasons justified immunity for malicious or bad faith use of garnishment procedures:

> As noted above, it is clear that the logic whereby the named plaintiff is thought to be engaged in state action by instituting a garnishment proceeding applies with equal force to that plaintiff's attorney. The Court finds that where malicious or bad faith use of garnishment procedures is proven, the immunity otherwise available to the attorney is not to be applied for the reason that it would not implement the goal it generally stands to achieve. The threat of civil liability for such malicious or bad faith conduct in no way "chills" the duty of an attorney to zealously present or defend the claims of his client, for by definition, malicious use of garnishment procedures implies a distinct and ulterior purpose on the part of the attorney. Such an attorney in no way "gambles" on the outcome of a court's decision, for the result is clear to him from the outset.

These considerations suggest the same result with respect to an attorney who is alleged to have knowingly and maliciously directed his client to initiate a groundless criminal prosecution. An attorney who represents his client in good faith will be immune from civil liability for malicious prosecution, because a necessary element of that tort would be absent. The common law recognizes immunity for an attorney who honestly, though mistakenly, advises

---

**22.** In *Brown v. Joseph, supra*, the Third Circuit wrote:

> We perceive no valid reason to extend this immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders. Implicit in the extension of judicial immunity to prosecutors was the recognition of a public policy encouraging free exercise of professional discretion in the discharge of pre-trial, trial, and post-trial obligations.

463 F.2d at 1048. If the public defender were not immune, the office would suffer discouragement of recruitment and the chilling of independent decision-making, which would be unfair in view of their adversary's prosecutorial immunity. *Id.* at 1049.

**23.** These policies were summarized in *United States General, Inc. v. Schroeder, supra*, 400 F.Supp. at 717, as follows:

> The Court recognizes that this principle of immunity is grounded upon critical social considerations, for, if an attorney must work in constant fear of civil liability, it is the rights of the public that will suffer. Any such threat of liability visits an obvious chilling effect upon the attorney's enthusiasm to vigorously defend his client's position. The remedies invoked by the Civil Rights Act are not to be invoked so as to create a conflict between the attorney's duties to protect himself and to zealously represent his client. As a matter of public policy, the attorney must not be placed in a position where he is compelled to gamble on the outcome of a case, with his own personal liability hanging in the balance [citations omitted].

his client to initiate criminal proceedings, *Kassan v. Bledsoe*, 252 Cal.App.2d 810, 60 Cal.Rptr. 799 (1967), or where an attorney relies in good faith upon his client's statements, *see* Annot., 27 A.L.R.3d 1113, 1130 (1969).

If an attorney knows, however, that his client acts with malice and without probable cause in filing a criminal complaint, or if the attorney's own acts are taken with malice and without probable cause, the attorney will not be immune from civil liability where his conduct deprives his client's adversary of liberty. *United States General, Inc. v. Schroeder, supra*; Annot., 27 A.L.R.3d 1113 (1969).[24] We hold that, under the facts alleged in the complaint, a cause of action under section 1983 is stated against these attorneys for malicious prosecution, due to the allegations that the attorneys had actual knowledge of the true facts yet acted with malice in directing that a criminal complaint be filed.

The motion to dismiss the complaint will be denied as to defendants Feinberg, Ginsburg, and their law firm.

The accompanying Order will be entered.

**24.** The resort to criminal process to accomplish debt collection, recover property or to enforce some other civil claim may expose an attorney who acts maliciously and without probable cause to liability, *Robinson v. Fimbel Door Co.*, 113 N.H. 348, 306 A.2d 768 (1973). There may also be attorney liability for maliciously instituting involuntary bankruptcy or receivership proceedings, Annot., 40 A.L.R.3d 296. Even the malicious initiation of civil proceedings against a debtor wrongfully thought to be delinquent may result in liability to an attorney having sufficient knowledge or interest in the wrongful proceeding. *See* Morrison, "Malicious Prosecution: Potential Pitfall of Debt Collection," 98 *N.J.L.J.* 723 (1975). Of course, we do not reach these issues here.

It would also seem that baseless prosecution of a criminal complaint to collect a debt is countermanded by the ABA Code of Professional Responsibility, DR 7–105 (1970) which states:
A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.
Similarly, DR 7–102(A) provides:
In his representation of a client, a lawyer shall not: (1) File a suit, assert a position, . . . or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.